Edward G. SULLIVAN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 12129.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 6, 1954.

Decided Feb. 3, 1955.

Mr. T. Emmett McKenzie, Washington, D. C., for appellant.

Mr. Harold H. Greene, Asst. U. S. Atty., Silver Spring, Md., with whom Messrs. Leo A. Rover, U. S. Atty., and Lewis Carroll and Frederick G. Smithson, Asst. U. S. Attys., were on the brief, for appellee. Mr. Gerard J. O'Brien, Asst. U. S. Atty., also entered an appearance for appellee.

Before EDGERTON, FAHY and DANAHER, Circuit Judges.

EDGERTON, Circuit Judge.

This is a narcotics case. In the afternoon of September 24, 1953 one Bolen telephoned the defendant from a police station and made an appointment to meet him. On another telephone in the same station, a policeman listened to the conversation. The defendant kept the appointment and sold Bolen drugs. Police were present and arrested the defendant. The District Court denied his motion to suppress the drugs as evidence. United States v. Sullivan, D.C., 116 F.Supp. 480. He appeals from his subsequent conviction. The indictment charged, in three counts, that on September 24, 1953 the defendant "did sell, barter, exchange and give away" heroin; "purchased, sold, dispensed and distributed" heroin; and "facilitated the concealment and sale" of heroin. 26 U.S.C. §§ 2553(a), 2554(a); 21 U.S.C.A. § 174. He was convicted on each count.[1]

■■ He contends that the defense of entrapment should have been submitted to the jury. But he admitted on the stand that he had supplied Bolen with heroin on the morning of September 24, 1953. Bolen's arrangement with the police to act as informer, and the sale for which the defendant was convicted, were made later in the day. It is immaterial that, if the defendant's testimony is true, the morning transaction was not a sale. It is unlawful to "sell * * * or give away" narcotics. 26 U.S.C. § 2554(a). And the morning transaction showed a "predisposition and criminal design", Sorrells v. United States, 287 U.S. 435, 451, 53 S.Ct. 210, 216, 77 L.Ed. 413, to violate the narcotics laws. This precludes any finding of entrapment with respect to the afternoon transaction. "Obviously, it is not necessary that the past offences proved shall be precisely the same as that charged, provided they are near enough in kind to support an inference that his purpose included offences of the sort charged." United

---

1. Cf. District of Columbia v. Hunt, 82 U.S.App.D.C. 159, 163–164, 163 F.2d 833, 837–838.

762

States v. Sherman, 2 Cir., 1952, 200 F.2d 880, 882.

■ This case involves one other question. An Act of Congress forbids persons "not being authorized by the sender" to "intercept" and "divulge" a communication or its "meaning". 47 U.S.C.A. § 605. Even if Bolen consented —and it is not clear that he did—to a policeman's listening to the telephone conversation, the defendant did not consent. We assume, for present purposes, that the defendant was the "sender" of his part of the conversation. As the Supreme Court has interpreted the Act, it requires the exclusion not only of a wrongfully intercepted conversation but also of evidence obtained by its use, since such evidence is "a fruit of the poisonous tree." Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307.

"Sophisticated argument may prove a causal connection between information obtained through illicit wire-tapping and the Government's proof. As a matter of good sense, however, such connection [is] so attenuated as to dissipate the taint." Ibid. Although the policeman acceded, in cross-examination, to a suggestion that his knowledge of Bolen's arrangements "to go to the * * * delicatessen * * * and meet Sullivan * * * came from listening in on the extension wire", the policeman had testified specifically that the defendant "agreed to meet [Bolen] at the usual place, he said, and at 3 o'clock." (Emphasis added.) Since the "usual place" was not identified over the telephone, what the police heard over the telephone did not directly enable them to be present at the criminal transaction. Neither did it alert them to question Bolen about his arrangements with the defendant, and thereby indirectly enable them to be present. For they knew that Bolen was arranging an appointment with the defendant, and were therefore fully alerted, before the telephone conversation took place.

Affirmed.