John B. MONROE, Appellant,

v.

UNITED STATES of America, Appellee.

George C. PRATHER, Appellant,

v.

UNITED STATES of America, Appellee.

Roger W. SIMKINS, Appellant,

v.

UNITED STATES of America, Appellee.

Curtis M. TAYLOR, Appellant,

v.

UNITED STATES of America, Appellee.

Albert H. SMITH, Appellant,

v.

UNITED STATES of America, Appellee.

Charles ANDERSON, Appellant,

v.

UNITED STATES of America, Appellee.

Burnie KING, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 12683–12687, 12689, 12690.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 20, 1955.

Decided April 30, 1956.

Petitions for Rehearing Denied
June 12, 1956.

Mr. Myron G. Ehrlich, Washington, D. C., for appellants Monroe and Prather.

**52**

Mr. John H. Burnett, Washington, D. C., with whom Mr. George E. C. Hayes, Washington, D. C., was on the brief, for appellant Simkins.

Mr. Joseph Sitnick, Washington, D. C., for appellant Taylor.

Mr. James F. Reilly, Washington, D. C., for appellant Smith.

Mr. Curtis P. Mitchell, Washington, D. C., with whom Mr. Delong Harris, Washington, D. C., was on the brief, for appellants Anderson and King.

Mr. Harold H. Greene, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., at the time record was filed, Lewis Carroll, Edward P. Troxell, John D. Lane and Carl W. Belcher, Asst. U. S. Attys., were on the brief, for appellee.

Mr. John F. Doyle, Asst. U. S. Atty., at the time record was filed, entered an appearance for appellee in Nos. 12683, 12684, 12685 and 12686.

Before WILBUR K. MILLER, FAHY and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

These are appeals from convictions under 62 Stat. 701 (1948), 18 U.S.C. § 371 (1952), for conspiring to violate § 22–704, D.C.Code 1951 by bribery, and from convictions of bribery itself. The conspiracy and bribery were directed toward influencing the official conduct of Lieutenant Todd O. Thoman, Jr., of the Metropolitan Police Department, to perform his duties with partiality and favor, and otherwise than as required by law in the enforcement of the gambling laws of the District of Columbia. Lieutenant Thoman was entirely innocent of wrongdoing. In fact he uncovered the allegedly criminal conduct by permitting himself seemingly to participate therein, while at the same time reporting the unfolding events to his superior officers and assembling evidence in preparation for arrests.

The indictment contains nineteen counts. Count one covers the conspiracy. The eighteen other counts cover specific acts of bribery. All appellants, together with John Winston, who was acquitted, were charged in the conspiracy count and were also charged with bribery in one or more other counts.

Two appellants, Monroe and Prather, were members of the Metropolitan Police Department. They are the only ones who were convicted of conspiracy. Monroe was also convicted of three charges of bribery.[1] Prather was acquitted of bribery, so that his appeal brings in question only his conviction with Monroe of conspiracy. Appellant Anderson was convicted of three charges of bribery and acquitted of three; King was convicted of one charge of bribery and acquitted of seven; Taylor was convicted of one and acquitted of one; Simkins was convicted of four and acquitted of one; and Smith was convicted of one.

■ Monroe was sentenced under the conspiracy count to imprisonment for twenty months to five years and to pay a fine of $1,000. He was also sentenced for sixteen months to four years for each bribery conviction, these sentences to run concurrently with one another and with his conspiracy sentence. Since the latter is for a longer time than his concurrent sentences for bribery, and since the conspiracy and bribery charges are intimately related, the judgment should be affirmed if no reversible error impairs the conspiracy conviction.[2] Since Prather was convicted only of conspiracy we are also required to review only that judgment as to him.

■ Monroe and Prather contend that there was a fatal variance between count

1. He was acquitted of three bribery counts.

2. Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774; United States v. Trenton Potteries Co., 273 U.S. 392, 402, 47 S.Ct. 377, 71 L.Ed. 700; Pierce v. United States, 252 U.S. 239, 252–253, 40 S.Ct. 205, 64 L.Ed. 542; cf. Bramblett v. United States, 97 U.S. App.D.C. 330, 231 F.2d 489, certiorari denied 76 S.Ct. 658. Compare Nelms v. United States, 94 U.S.App.D.C. 267, 215 F.2d 678; Washington v. United States, 98 U.S.App.D.C. ——, 232 F.2d 357.

one, the conspiracy count, and the proof, in that the conspiracy count charged but one conspiracy whereas the proof showed several. The same contention is made by all other appellants, but of course it is not available to them because they were acquitted of conspiracy. And insofar as Monroe and Prather are concerned we find no reversible error due to the alleged variance, assuming *arguendo* its existence. In Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314, the Supreme Court held that the legal effect of such a variance depends upon whether it has substantially injured the defendant:

> "The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused."

The Court said that the reasons for the general rule requiring correspondence between allegations and proof are that the accused be definitely informed of the charges so as to enable him to present his defense without being taken by surprise by the evidence, and that he be protected against another prosecution for the same offense.

Applying these tests to the conspiracy convictions of Monroe and Prather it seems altogether clear their substantial rights were not affected. These two officers were the main participants in the undertaking to secure the bribery of Lt. Thoman. There was testimony that Monroe first approached Thoman about obtaining protection money from gamblers, and that Monroe brought Prather into the scheme with a view of both himself and Prather joining Thoman in carrying out a widespread plan of obtaining such money. After Monroe's initiation of the project, Prather, in accordance with Monroe's plan and at his instigation, personally spoke to Thoman about it. At an arranged meeting with Prather protection money was passed to Thoman. Thoman reported this to his superiors, and with them to the United States Attorney. There was abundant additional evidence of the conspiratorial activities of Monroe and Prather, including the passage to Thoman of names, addresses, and telephone and tag numbers of gamblers, and with contacts, in furtherance of the conspiracy, between Thoman and appellants Anderson, Simkins, Taylor, and King. The conspiracy of Monroe and Prather embraced these others; and if any of the latter considered individually could not be said to have participated in as broad an operation as did Monroe and Prather, this did not significantly affect the fairness of the trial of these two for conspiracy. They were a part in some way of all that occurred, though others might not have been. Therefore it cannot be said that proof of the whole operated unfairly to their prejudice, or came as a surprise to them. Furthermore, the possibility of prejudice in later defending on the ground of their present convictions, should they again be prosecuted for any of the count one transactions used to obtain these convictions, is too fanciful to be used as a basis for setting aside such convictions. The Supreme Court met a similar problem in Berger by stating, "certainly the fact that the proof disclosed two conspiracies instead of one, each within the words of the indictment, cannot prejudice his defense of former acquittal of the one or former conviction of the other, if he should again be prosecuted." 295 U.S. at page 83, 55 S.Ct. at page 631. The reason this is so here, as well as in Berger, is that, assuming the indictment itself does not disclose all the conduct to which the evidence might be directed in proving the charge made, nevertheless, in event of an attempted second prosecution, resort could be had to the record of the evidence, or even to parole evidence if necessary. See Dunbar v. United States, 156 U.S. 185, 191, 15 S.Ct. 325, 39 L.Ed. 390; Bartell v. United States, 227 U.S. 427, 433, 33 S.Ct. 383, 57 L.Ed. 583; Kotteakos v. United States, 328 U.S. 750, 780, 66 S. Ct. 1239, 90 L.Ed. 1557 (dissenting opinion); United States v. Busch, 2 Cir., 64 F.2d 27, certiorari denied 290 U.S.

627, 54 S.Ct. 65, 78 L.Ed. 546; 48 Harv. L.Rev. 515, 516.

Appellants' argument respecting the alleged variance relies heavily upon the opinion of Mr. Justice Rutledge for the Supreme Court in Kotteakos v. United States, supra, where substantial prejudice was found to have resulted from a conviction of a single conspiracy on evidence conceded by the Government to have proved some eight or more different conspiracies. The indictment named thirty-two defendants of whom nineteen were tried. The cases of thirteen went to the jury and seven were found guilty. The key figure in that case, however, the one common to the total scheme,[3] had pleaded guilty. He was not in the case as it was decided by the Supreme Court. The Court held that the variance was prejudicial. But the Berger case was not disapproved. It was distinguished on factual differences between the two cases. The Kotteakos opinion [328 U.S. 750, 66 S.Ct. 1244], is a treatise upon the subject of when, and when not, error should lead to reversal within the terms of section 269 of the Judicial Code, 40 Stat. 1181 (1919), 28 U.S.C. § 391 (1940), which requires an appellate court to give judgment " 'without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties.' " This principle is now embodied in Rules 51 and 52(a), Fed.R. Crim.P. 18 U.S.C. But the finding by the Supreme Court of prejudicial error in Kotteakos cannot be transplanted to the case at bar. Not only in Kotteakos was the "hub" man out of the case when it reached the appellate courts, while here the two "hub" men are the only ones now involved in the question, but, as we have outlined, the scheme of Monroe and Prather extended to all that was proved respecting the conspiracy. They were not surprised, nor were their substantial rights otherwise prejudiced by the alleged variance.

Lt. Thoman equipped himself with a Minifon to aid in the investigation. Through this device numerous conversations he held with various appellants were recorded on wires. The spools upon which the recordings were made were turned over to Lt. Thoman's superiors in the Police Department. A number of recordings thus obtained were played for the jury over objections. We find no merit in any of these objections. Appellants contend, in the first place, that this evidence was inadmissible under the best evidence rule. They say that Lt. Thoman's testimony was the best evidence as to the conversations. But courts have consistently admitted such recordings in evidence. Schuyler v. United Air Lines, D.C.M.D.Pa., 94 F. Supp. 472, affirmed 3 Cir., 188 F.2d 968; Commonwealth v. Clark, 123 Pa.Super. 277, 187 A. 237; State v. Slater, 36 Wash.2d 357, 218 P.2d 329; cases cited in Annotation, 168 A.L.R. 927; Burgman v. United States, 88 U.S.App.D.C. 184, 188 F.2d 637, certiorari denied 342 U.S. 838, 72 S.Ct. 64, 96 L.Ed. 1347; Gillars v. United States, 87 U.S.App.D.C. 16, 27, 182 F.2d 962, 973; cf. People v. Hayes, 21 Cal.App.2d 320, 71 P.2d 321. Their competency as evidence derives from their reliability as a means of arriving at the truth. Of course, there must be evidence introduced from which it can be inferred that the recordings are accurate. Lt. Thoman provided such evidence by testifying as to the operation of the recording device, his method of operating it, the accuracy of the recordings, and the identities of the persons speaking.

Appellants also argue that particular recordings, because inaudible at times or incomplete, gave the jury only a part of what they purported to represent. They cite Hunter v. Hunter, 169 Pa.Super. 498, 83 A.2d 401; People v. Stephens, 117 Cal.App.2d 653, 256 P.2d 1033; and William v. State, 39 Ala. 532. No all embracing rule on admissibility

---

3. The conspiracy charged was to obtain loans under the National Housing Act, 12 U.S.C.A. § 1701 et seq. for purposes outside its terms.

should flow from partial inaudibility or incompleteness. The Court of Appeals for the Third Circuit, in United States v. Schanerman, 150 F.2d 941, 944, has said that partial inaudibility is no more valid reason for excluding recorded conversations than the failure of a personal witness to overhear all of a conversation should exclude his testimony as to those parts he did hear. Unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy the recording is admissible, and the decision should be left to the sound discretion of the trial judge. This is especially so when the witness who heard the statements recorded also testifies, so that the recordings give independent support to his testimony. Wright v. State Ala.App., 79 So.2d 66; State v. Slater, supra. Here the trial judge followed the correct procedure of having the records played out of the presence of the jury so that she could rule on any objections raised by defendants before the jury heard the recordings. See Wright v. State, supra, 79 So.2d at page 73. We have no basis for finding an abuse of discretion by the District Court in not deciding that the recordings were too incoherent, inaudible or partial to be admitted.

Appellants say the recordings were not admissible as corroborative of Thoman's primary evidence because the latter had not been impeached. They point to the rule that prior consistent statements of a witness are not admissible to corroborate his testimony until he has been impeached, citing Goins v. United States, 4 Cir., 99 F.2d 147, 150. But we do not rest the admissibility of the recordings upon a theory they constitute corroborative evidence, as is sometimes done. We think, as above indicated, that they are admissible as independent evidence of what occurred.

■■ Various motions were filed for inspection of Government documents and recordings and to "play, hear, record, inspect and/or to copy" the recorded material. These motions were all denied. It is doubtful that the Minifon record-

ings could qualify for discovery and inspection under Rule 16, Fed.R.Crim.P., which applies to "* * * documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process * * *." The recordings are analogous to copies of confessions made by defendants to the police, which several courts have held do not fall within Rule 16. Shores v. United States, 8 Cir., 174 F.2d 838, 11 A.L.R.2d 635; United States v. Black, D.C.N.D.Ind., 6 F.R.D. 270; cf. United States v. Chandler, D. Mass. 7 F.R.D. 365, affirmed 1 Cir., 171 F.2d 921, certiorari denied 336 U.S. 918, 69 S.Ct. 640, 93 L.Ed. 1081. See, also, Comment, "Pre-Trial Disclosure in Criminal Cases," 60 Yale L.J. 626, 628. However, Rule 17(c), which also permits the court to order pre-trial inspection, is broader in scope than Rule 16, extending to "books, papers, documents or other objects" designated in a subpoena, and since some subpoenas were served by defendants in the effort to obtain discovery we think their various motions and attempts should fairly be construed as invoking Rule 17(c). The recordings were evidentiary, and therefore under the interpretation of Rule 17(c) adopted by the Supreme Court and already followed by this court, the trial court in its discretion could have required pre-trial production. Bowman Dairy Co. v. United States, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879; Fryer v. United States, 93 U.S.App.D.C. 34, 207 F.2d 134, certiorari denied 346 U.S. 885, 74 S.Ct. 135, 98 L.Ed. 389. However, the court did not abuse its discretion in denying appellants' requests, because the accused had already been accorded by the Government an opportunity to inspect the recordings. The United States offered to play them for the defendants and their counsel; and before the court denied the motions seeking specifically permission to inspect the recordings they had in fact been played over a period of three days in conformity with the Government's offer. Counsel for defendants in related cases attended the playing for

**56**

part 'of the time. Appellants and their counsel could have done so.

▮ Appellants argue that they were entitled to hear the original recordings, not the copies which the Government played. But the Government represented to the court that the original recordings were too fragile to be used for discovery playing and filed an affidavit in which the accuracy of the reproduction from the originals was certified. The truth of this affidavit is not brought in question. Consequently, it was well within the discretion of the trial court to decline to order inspection of the originals. And the argument now made that appellants were entitled to make stenographic transcripts of the recordings, or in lieu thereof to be furnished copies of transcripts made by the Government, was not pressed upon the trial court in any of the motions for pre-trial discovery or production to which we have referred. Nor does it appear that permission was asked of the Government, and denied, to make a transcript at the time the recordings were played for the benefit of the defendants. Consequently, appellants cannot now complain that they were deprived of any alleged right to have a transcript.

▮ It is contended that telephone conversations between Lt. Thoman and appellants were intercepted and recorded, and that the recordings were used in violation of section 605 of the Federal Communications Act, 48 Stat. 1103–1104 (1934), 47 U.S.C.A. § 605. This provision reads in pertinent part as follows:

"* * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; * *· * and no person having received such intercepted communication or having become acquainted with the contents, substance, purport, effect, or meaning of the same or any part thereof, knowing that such informa- tion was so obtained,- shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto: * * *."

What occurred is that the Lieutenant obtained the telephone recordings now in question through the use of an induction coil apparatus, consisting of a suction cup attached to the telephone receiver, with a wire running from the cup to the Minifon recording device. We need not decide the much discussed question whether this constituted an interception within the meaning of the statute. See United States v. Polakoff, 2 Cir., 112 F.2d 888, 134 A.L.R. 607, certiorari denied 311 U.S. 653, 61 S.Ct. 41, 85 L.Ed. 418; Reitmeister v. Reitmeister, 2 Cir., 162 F.2d 691; Flanders v. United States, 6 Cir., 222 F.2d 163; United States v. Yee Ping Jong, D.C.W.D.Pa., 26 F.Supp. 69; United States v. Lewis, D.C.D.D.C., 87 F. Supp. 970, reversed on other grounds sub nom. Billeci v. United States, 87 U.S. App.D.C. 274, 184 F.2d 394, 24 A.L.R. 881; United States v. Sullivan, D.C.D.D. C., 116 F.Supp. 480, affirmed 95 U.S.App. D.C. 78, 219 F.2d 760; United States v. Stephenson, D.C.D.D.C., 121 F.Supp. 274, appeal dismissed 96 U.S.App.D.C. 44, 223 F.2d 336; and our own case of James v. United States, 89 U.S.App.D.C. 201, 191 F.2d 472, certiorari denied 342 U.S. 948, 72 S.Ct. 563, 96 L.Ed. 705. All these decisions must be considered with Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322. We do not reach the question because, assuming interception, no use of the recorded telephone conversations brought about reversible error in this trial. The recordings were not offered or admitted in evidence. The principal use made of them was by Lt. Thoman when, before giving his own testimony of the conversations recorded in this manner, he refreshed his recollection by playing the recordings. However, since he was himself the recipient of the messages, or a participant in the

conversations, the connection between any possible violation of the statute and his testimony had "become so attenuated as to dissipate the taint" in its relation to admissibility. Nardone v. United States. 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307. See, also, Sullivan v. United States, 95 U.S.App.D.C. 78, 219 F.2d 760. Lt. Thoman's testimony was not itself the product of an illegal interception; he repeated on the stand what he himself had heard. The aid the recordings gave to his recollection did not require the trial court to exclude his knowledge from the jury.

▮ There is an additional contention that the so-called interceptions had been divulged to police officers and others in the Government's preparation for trial. But Lt. Thoman transmitted the same information legally, as the product of what he himself heard. See Nardone v. United States, supra, 308 U.S. at page 341, 60 S.Ct. 266; United States v. Goldstein, 2 Cir., 120 F.2d 485, 487, affirmed 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312. Thus again it cannot be said that any part of the Government's case was significantly produced by the allegedly illicit telephone interceptions.

▮ The remaining point requiring discussion is the contention of appellants that the conviction of each must be reversed because each was prejudiced in his defense by the trial of all substantive charges together, and with the conspiracy charge. Except for the appellant Smith, however, no appellant reserved this point clearly on the record either before, during, or after trial. The motion of appellants before trial attacking the indictment itself for alleged misjoinder went to the validity of the indictment, not to the question of advisability of separate trials. Since the offenses charged were of the same or similar character, and the defendants were alleged to have participated in the same conspiracy, the joinder of offenses and defendants in the indictment itself was permissible under Rule 8, Fed.R.Crim. P. Robinson v. United States, 93 U.S. App.D.C. 347, 210 F.2d 29; Scheve v. United States, 87 U.S.App.D.C. 289, 184 F.2d 695; cf. Spear v. United States, 4 Cir., 216 F.2d 185. Appellants also persistently contended that the proof showed more than one conspiracy, whereas only one was charged, and that this variance was prejudicial. We have disposed of that branch of the case in finding no prejudice caused Monroe and Prather by the alleged variance, and since the other appellants were acquitted of conspiracy any question in that regard is eliminated as to them. The present contention is based, not on a variance between indictment and proof, but on the trial at one time of the conspiracy count and the substantive counts of bribery. If appellants wished to be tried separately on these charges they were under strong obligation explicitly so to urge in the District Court by motion under Rule 14, Fed.R. Crim. P. See Dunaway v. United States, 92 U.S.App.D.C. 299, 205 F.2d 23; United States v. Northeast Texas Chapter, 5th Cir., 181 F.2d 30. This was not done except in the case of Smith. The others appear to have been willing to leave their fate to a trial including the conspiracy and substantive counts. Assuming, however, that the accused reserved the matter for our review, we find no error in the failure of the District Court to grant relief under Rule 14. We note initially that the problem is narrowed by the acquittal of all, except Monroe and Prather, of conspiracy. The gravest danger of prejudice was that some might be convicted of conspiracy through attribution to them of evidence applicable only to others. Blumenthal v. United States, 332 U.S. 539, 559, 68 S.Ct. 248, 92 L.Ed. 154. All except Monroe and Prather escaped this danger by their acquittal of conspiracy; and, as we have already seen, in connection with the discussion of the alleged variance, the evidence so clearly established that Monroe and Prather were intimately involved in the whole of what occurred, and the evidence of their participation in the conspiracy was so complete, that we cannot hold that prejudicial error afflicted their

**58**

convictions of conspiracy due to the trial of others with them.

■ The validity of Monroe's conviction of conspiracy renders it unnecessary to consider his conviction of bribery, see note 2 supra, and Prather was acquitted of all substantive charges of bribery. Hence, the question remaining is whether the other appellants were prejudiced by being tried for conspiracy with the substantive offenses, and together on the substantive offenses, of which alone they were convicted. This involves a matter of judgment to be exercised now in light of developments at the trial, keeping in mind that the decision was for the sound discretion of the trial judge. Dunaway v. United States, supra. The jury, as we have seen, acquitted Prather entirely of bribery, Anderson was convicted of three of six charges of bribery, King was convicted of only one of eight charges of bribery, Taylor was convicted of one charge and acquitted of one, and Simkins was convicted of four and acquitted of one.[4] Thus, the jury was selective. This at least to some degree indicates that the jury returned verdicts only upon the basis of evidence relevant to each count and each defendant. Finnegan v. United States, 8 Cir., 204 F.2d 105, 109–110. The judge specifically warned the jury in this regard, saying,

> "that with respect to the substantive counts of the indictment you must determine the guilt or innocence of each defendant charged thereunder solely on the evidence produced with respect to that defendant. * * *
>
> "Now, I shall not refer in detail to every one of the defendants, but that same rule applies to each and all of the defendants with respect to these substantive counts, and I have just mentioned this particularly so that it would be clear to you.
>
> "You are told that testimony which has been admitted only to

apply as to a specified defendant may only be considered by you as to that defendant and none other."

Furthermore, the court charged in considerable detail as to the separate substantive counts. She referred to the dates and the amounts alleged to have been paid on those dates for protection, in such a manner that it is clear the jury understood just how they should go about determining guilt or innocence with respect to each substantive count. Judging the situation after the trial, therefore, as we must do, knowing that all appellants except Monroe and Prather were acquitted of conspiracy, and considering the evidence supporting each separate substantive count which resulted in a verdict of guilty, together with the court's full, fair and careful charge, we may not speculate that the trial actually led to any conviction which would not have occurred except for the consolidated trial. Dunaway v. United States, supra. While the danger of which the Supreme Court warned in Blumenthal v. United States, supra, 332 U.S. at page 559, 68 S.Ct. at page 257, 92 L.Ed. 154, that evidence might be transferred to one to whom it does not apply, must be constantly in mind in permitting and in reviewing joint trials—a danger "likely to arise in any conspiracy trial and more likely to occur as the number of persons charged together increases"— we think the conclusion reached in Blumenthal that prejudice did not occur should also be reached here.

We have examined other contentions of appellants but do not find it necessary to discuss them. None requires reversal. They include the claim that the District Court abused its discretion in refusing appellants' request that Lt. Thoman be required to give a typewriting demonstration when being cross-examined about his testimony regarding his typewritten notes; the contention that evidence of other offenses than those on trial was erroneously admitted; and the

---

4. Smith was convicted of the single bribery charge which was brought against him.

contention that the court erred in refusing to instruct the jury on the subject of extortion.

Affirmed.

## On Petitions for Rehearing.

In the opinion rendered April 30, 1956, we stated that appellants' argument that they were entitled to make stenographic transcripts of the recordings or to be furnished copies of the Government's transcripts was not pressed upon the trial court in the motions to which we referred. After issuance of our opinion appellants supplemented the record in this court by including a transcript of certain proceedings prior to trial which had not been before us when we decided the case. In those proceedings appellants did press for the right to make stenographic transcripts of the recordings or to be furnished copies of transcripts by the government. Nevertheless, aside from appellants' failure earlier to bring this matter before us in the record on appeal, we conclude that the refusal to grant the request was not reversible error. In addition to the earlier opportunity, referred to in our opinion, to hear the recordings, those parts of the recordings actually admitted in evidence were played again out of the presence of the jury but with counsel for appellants present. This was done to aid the court in ruling upon their admissibility. This additional opportunity of appellants to acquaint themselves with the contents of the recordings actually used—during a trial which lasted some weeks—with no request or denial then of an opportunity to transcribe them, supports our conclusion that the refusal complained of was not such an abuse of discretion as to require a new trial of these cases. We add that appellants point to no particular prejudice which grew out of the refusal.

The petitions for rehearing are denied.