Vincent D. **TODISCO**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 17311.

United States Court of Appeals Ninth Circuit.

Nov. 6, 1961.

Certiorari Denied Feb. 19, 1962.

See 82 S.Ct. 602.

Maurice J. Hindin, Beverly Hills, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Crim. Div., and William Bryan Osborne, Asst. U. S. Atty., Asst. Chief, Crim. Div., Los Angeles, Cal., for appellee.

Before HAMLIN, MERRILL and KOELSCH, Circuit Judges.

MERRILL, Circuit Judge.

Appellant, following jury trial, was adjudged guilty of attempting to bribe an Internal Revenue agent in violation of 18 U.S.C. § 201. He appealed from that judgment.

Appellant is an attorney at law practicing in Fresno, California. In March, 1960, he was representing a client in at-tempting to negotiate a compromise settlement of tax liability as assessed by the tax court. In these negotiations the Internal Revenue Service was represented by Agent Earl K. Oto.

In the course of negotiations appellant had made several statements to Oto assuring him of rewards in the event of a favorable settlement. These overtures were reported by Oto to his superiors. On March 29 and 31 and on April 1, 4 and 5, 1960, conversations took place between appellant and Oto in the former's law office, during all of which Oto was equipped with a Fargoe device, being a miniature radio transmitter. The conversations in their entirety were transmitted and recorded at the point of reception. The upshot of these conversations was an agreement that upon Oto's acceptance of a settlement appellant's fee of $500.00 was to be split between them.

The agreement was never carried through, but on April 6 appellant was arrested.

On trial appellant's position was that commencing in the fall of 1959 Oto had been soliciting him for a bribe and that he had been leading Oto on; that Oto had informed the revenue service only after he became alarmed and suspicious. The government's case rested almost entirely upon the tape recordings of Oto's conversations with appellant. Over appellant's objections and motion to suppress, these tapes were received in evidence.

Appellant's principal contentions upon this appeal relate to the admissibility of these tapes. Upon three grounds appellant contends that they were inadmissible.

First, appellant contends that the recording of his conversations violated the Fourth and Fifth Amendments of the United States Constitution.

In the eavesdropping area constitutional problems are usually couched in terms of whether the conduct under scrutiny amounted to an unlawful search and seizure. The answer to this question in turn, in this area, is largely dependent

upon whether entry upon the premises amounted to trespass. That it did not in the case before us is established by On Lee v. United States, 1951, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270.

In that case an old acquaintance of the defendant who was, without the defendant's knowledge, serving as an undercover agent of the United States Bureau of Narcotics, and who was equipped with a hidden device for radio transmission, engaged defendant in conversation in defendant's laundry. Damaging admissions were thus secured and recorded. They were held admissible. The court emphasized that the agent was present with the defendant's consent and rejected the theory (also advanced by this appellant) that the true purpose of the visit, unknown to the defendant and unconsented to by him, constituted the agent's presence a trespass ab initio.

Appellant asserts that the decision of the Supreme Court in Silverman v. United States, 1961, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734, demonstrates that the thinking of the court respecting eavesdropping has undergone a change since its decision in On Lee.

In Silverman a spike was driven into the wall of defendant's premises by means of which the police were able, through an electronic device, to reach and record defendant's conversations within the room. This evidence was held inadmissible.

On Lee was expressly distinguished, however. The court stated at page 510, 81 S.Ct. at page 682:

"But in both Goldman and On Lee the Court took pains explicitly to point out that the eavesdropping had not been accomplished by means of an unauthorized physical encroachment within a constitutionally protected area."

The court's principal concern in the eavesdropping cases is the protection of the right of privacy. As stated in Silverman v. United States, supra at page 511, 81 S.Ct. at page 683:

"The Fourth Amendment, and the personal rights which it secures, have a long history. At the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."

No such right is threatened here. In discussing the subject of wiretapping with the consent of one party to the conversations, Professor Schwartz points out in "On Current Proposals to Legalize Wiretapping," 103 Pennsylvania Law Review 157, 166:

"The risk to which the non-consenting party is subjected is not really a wiretapping risk but the risk of betrayal by the other party who acquiesced in the tap, a risk inherent in any form of communication with him."

Bradley and Hogan, in "Wiretapping: From Nardone to Benanti and Rathbun," 46 Georgetown Law Journal 418, 440, state:

"If the recipient of the information is free to betray the confidence of the other party, what difference should the form of the betrayal make? If he can repeat what he hears, if he can make notes of what he is told, if he can make a record of the conversation, is it not logical that he ought to be allowed to let a third person do these things for him?"

The right which appellant here asserts would seem to be little more than the right to rely upon Oto's apparent inability to produce proof beyond his own testimony of the substance of the conversation in which he engaged with appellant. This has little relation to an intrusion upon privacy which is the problem at the heart of the constitutional issues presented by eavesdropping.

We conclude that no constitutional right of appellant was violated by the manner in which the tapes were secured or by their admission into evidence.

The second ground upon which appellant rests his contention that the tapes

were inadmissible is that the evidence was secured contrary to federal statute. 47 U.S.C. § 301 provides that "no person shall use or operate any apparatus for the transmission of * * * communications * * * by radio * * * except * * * with a license in that behalf granted under the provisions of this chapter." Oto had no license.

■ The United States asserts that this section cannot be read to apply to the use of a Fargoe device. This issue we do not reach. Even if a license be required for the operation of such a device, the failure to secure one can hardly be held to render inadmissible evidence secured by such an operation. Where illegally obtained evidence is held inadmissible, it is in those cases in which it was obtained in violation of some federally protected right of the defendant and where public policy against its admission can be said to exist. As stated in Nardone v. United States, 1939, 308 U.S. 338, 340, 60 S.Ct. 266, 267, 84 L.Ed. 307:

> "Any claim for the exclusion of evidence logically relevant in criminal prosecutions is heavily handicapped. It must be justified by an overriding public policy expressed in the Constitution or the law of the land. In a problem such as that before us now, two opposing concerns must be harmonized: on the one hand, the stern enforcement of the criminal law; on the other, protection of that realm of privacy left free by Constitution and laws but capable of infringement either through zeal or design. In accommodating both these concerns, meaning must be given to what Congress has written, even if not in explicit language, so as to effectuate the policy which Congress has formulated."

■ Here the purpose of the licensing law is to prevent interference with radio communications. No right of the defendant was violated by the lack of license. No policy against admission of evidence secured by the radio operation can be said to arise from such lack. We conclude that operation of the Fargoe device without license constituted no bar to the admissibility of the tapes.

■ The third ground for appellant's attack on the admissibility of the tapes is that no proper foundation was laid in that they were identified only by Oto and that the officer on the receiving end did not testify. Further, appellant contends that the recordings were so fragmentary and unintelligible as to render them of no reliable probative force.

In Monroe v. United States, 1956, 98 U.S.App.D.C. 228, 234 F.2d 49, 55, it was held:

> "Unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy the recording is admissible, and the decision should be left to the sound discretion of the judge. * * * Here the trial judge followed the correct procedure of having the records played out of the presence of the jury so that he could rule on any objections raised by defendants before the jury heard the recordings."

In this case, prior to the playing of any recording before the jury, the trial judge listened to the recordings out of the presence of the jury and had Oto identify the voices which were heard on the tapes. In each instance Oto identified the voices that were to be heard, identified the place where the recording was made and the date and the persons present. Furthermore, he testified in each instance that these recordings were accurate in that he had listened to them shortly after the conversation took place. With but few exceptions it would appear that the tapes have been transcribed in their entirety.

■ No abuse of discretion appears. The probative force was for the jury to assess.

We conclude that it was neither error nor abuse of discretion to admit the tapes in evidence.

Appellant next contends that the course of conduct established by the evidence constituted entrapment as a matter of law.

The issue of entrapment was presented to the jury. Appellant asserts that there were no factual issues to be decided by the jury upon this question and that the judge should have ruled upon it in his favor. We disagree. An essential issue was whether Oto had, as appellant contended on trial, first planted the idea of a bribe in appellant's mind. We cannot say that this fact so conclusively appears from the record as to render the issue of entrapment one of law.

Appellant contends that to make use against him of his conversations with Oto is to violate his right against self-incrimination. But appellant was not confessing to a crime. He was committing one. Even if there were self-incrimination, it was wholly voluntary. There is obviously no merit to this contention.

Finally, appellant contends that the district court committed error in denying his motion for a bill of particulars prior to trial. He points out that on March 31, 1960, a complaint was filed against him by a federal agent charging him with attempted bribery; that he was never prosecuted on this complaint; that he was subsequently indicted on one count charging an offense committed "on or about April 6, 1960." He asserts that this created an uncertainty as to the scope of the transactions or conversations upon which the government intended to rely and that it was to meet this situation that he moved for a bill of particulars. That motion was opposed by the United States and denied by the district court.

The United States denies that this constituted abuse of discretion. Even assuming that it did, however, we find no prejudice to appellant. He was fully aware at all times of the scope of Oto's participation and the potential scope of his testimony. He listened to the recordings upon which the government proposed to rely before the first witness was called. We conclude that failure to grant a bill of particulars does not warrant reversal.

Affirmed.