**UNITED STATES of America, Appellee,**

v.

**Anthony RICCO, a/k/a "Tony Bragiole", Defendant-Appellant.**

**No. 226, Docket 77–1290.**

United States Court of Appeals, Second Circuit.

Argued Oct. 5, 1977.

Decided Nov. 30, 1977.

---

J. Jeffrey Weisenfeld, New York City, for appellant.

Dominic F. Amorosa, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., Audrey Strauss, and Robert J. Jossen, Asst. U. S. Attys., New York City, of counsel), for appellee.

Before FRIENDLY, GURFEIN and MESKILL, Circuit Judges.

FRIENDLY, Circuit Judge:

Anthony Ricco, also known as Tony Bragiole and hereafter referred to as such, appeals from a judgment of the District Court for the Southern District of New York, convicting him on three counts of an indictment. One count charged Bragiole and others with conspiracy to violate the federal narcotics laws, 21 U.S.C. § 846; the two other counts charged possession of cocaine in May or June, 1973, and of heroin in October, 1973, with intent to distribute, in violation of 21 U.S.C. § 841. Bragiole, one of twelve defendants named in the indictment, had obtained a severance on the ground that another defendant, his nephew Angelo Ricco, would testify on his behalf if Bragiole were to receive a separate trial.

The convictions of Angelo Ricco and two other defendants were affirmed by this court on February 7, 1977, see *United States v. Ricco*, 549 F.2d 264, *cert. denied*, 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977).[1]

The Government's evidence overwhelmingly established that Bragiole entered into a large scale narcotics conspiracy early in 1971 and remained in it until October, 1973, when Peter Mengrone, who had entered the conspiracy earlier in 1973, was arrested by New York State authorities while endeavoring to sell an undercover agent three kilos of heroin supplied by Bragiole and Angelo Ricco. The sole ground of appeal is this: Although the trial judge had suppressed tapes which were the product of New York State authorized wiretaps of Mengrone's telephone on the ground of inexcusable delay in the sealing required by N.Y.Crim. Proc.L. § 700.50, *United States v. Ricco*, 421 F.Supp. 401 (1976), he refused to exclude Mengrone's testimony despite the fact that, as the judge's ruling permitted, 421 F.Supp. at 411, the Government had shown Mengrone a transcript of his telephone conversations of October, 1973, a short time before he testified at Bragiole's trial in May, 1977.

The relevant federal statute, 18 U.S.C. § 2518(8)(a), provides:

(8)(a) The contents of any wire or oral communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire or oral communication under this subsection shall be done in such way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an

---

1. Two other defendants convicted at the first trial did not appeal; another two pleaded guilty. The indictment as to the remaining four defendants was severed. Angelo Ricco did not testify at Bragiole's trial.

order of the issuing or denying judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this chapter for investigations. *The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire or oral communication or evidence derived therefrom under subsection (3) of Section 2517.* (emphasis added)

Subdivision (3) of § 2517 says:

(3) Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.[2]

An untimely sealing has been held equivalent to the "absence" of the seal required by § 2518(8)(a). *United States v. Gigante,* 538 F.2d 502, 506–07 (2 Cir. 1976).

Mengrone's direct testimony, in which he gave his own recollection of two conversations that had been intercepted, did not constitute any "disclosure" of the tapes or the transcripts or of "evidence derived therefrom." While Mengrone was asked twice by defendant's counsel on cross-examination to read transcriptions of suppressed tape recordings to refresh his recollection

and impeach his credibility, the defendant cannot complain of that. The defendant's case must therefore rest on the point that § 2518(8)(a) not only prohibits disclosure of improperly sealed tapes but also prohibits their "use." But the "use" prohibited by § 2518(8)(a) is use "under subsection (3) of section 2517," which refers only to disclosure *"while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or subdivision thereof."* (emphasis added). It does not, by its terms, apply to nontestimonial uses. See *United States v. Fury,* 554 F.2d 522, 531–32 (2 Cir.), *cert. denied,* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977). Refreshing a witness' recollection before trial, then, falls not within § 2517(3) but rather within § 2517(2) —use by an investigative or law enforcement officer "to the extent such use is appropriate to the proper performance of his official duties." Here the Assistant United States Attorney used the tapes to refresh the recollection of Mengrone before trial. Use permitted by § 2517(2) is not subject to the strictures of § 2518(8)(a). It is only after the trial begins that refreshing a witness' recollection falls within § 2517(3) and therefore within the § 2518(8)(a) prohibition. See S.Rep.No.1097, 90th Cong., 2d Sess. (1968), quoted in 2 [1968] U.S.Code Cong. & Admin.News at pp. 2188–89 and discussed *infra.*

*Monroe v. United States,* 98 U.S.App.D.C. 228, 235, 236, 234 F.2d 49, 56, 57, *cert. denied,* 352 U.S. 873, 77 S.Ct. 94, 1 L.Ed.2d 76 (1956), dealt with a similar issue under § 605 of the Communications Act. That statute provided that "no person not being authorized by the sender shall intercept any

---

2. The New York statute is similar. CPL § 700.50 subd. 2 directs that:

2. Immediately upon the expiration of the period of an eavesdropping warrant, the recordings of communications made pursuant to subdivision three of section 700.35 must be made available to the issuing justice and sealed under his directions.

Section 700.65 subd. 3 states:

3. Any person who has received, by any means authorized by this article, any information concerning a communication, or evidence derived therefrom, intercepted in accordance with the provisions of this article, may disclose the contents of that communication or such derivative evidence while giving testimony under oath in any criminal proceeding in any court or in any grand jury proceeding; provided, however, that the presence of the seal provided for by subdivision two of section 700.50, or a satisfactory explanation of the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any communication or evidence derived therefrom.

**436**

communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." In the second *Nardone* case, *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), the Supreme Court construed this language as prohibiting "use of the proscribed evidence" to obtain otherwise competent testimony. In *Monroe* a police officer had installed a recording device on his own telephone. Declining to decide "the much discussed question whether this constituted an interception within the meaning of the statute," the court held that the Communications Act was not violated in any event since the recordings had not been offered in evidence but had been used by the officer only to refresh his recollection before taking the stand. The officer's testimony, the court said, "was not itself the product of an illegal interception; he repeated on the stand what he himself had heard." 234 F.2d at 57.

The framers of the interception chapter of Title 18 were aware of the *Monroe* decision. The analysis of § 2517(3) in the Senate Report, S.Rep.No.1097, 90th Cong., 2d Sess. (1968), quoted in 2 [1968] U.S.Code Cong., & Admin.News at pp. 2188–89, had this to say:

> Paragraph (3) authorizes any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication or evidence derived therefrom intercepted in accordance with the provisions of the proposed chapter to disclose the contents of that communication or evidence derived therefrom while giving testimony. It envisions, of course, the use and disclosure of such evidence at trial to establish guilt directly (*New York v. Saperstein*, 2 N.Y.2d 210, [159 N.Y.S.2d 160,] 140 N.E.2d 252 (1957)), or to corroborate (*United States v. Walker*, 320 F.2d 472 (6th 1963)), or to impeach (*People v. Hughes*, 203 Cal.App.2d 598, 21 Cal.Rptr. 668 (1962)), a witness' testimony or to

refresh his recollection (*Monroe v. United States*, [98 U.S.App.D.C. 228,] 234 F.2d 49 (1956), certiorari denied, 355 U.S. 875, 78 S.Ct. 114, [2 L.Ed.2d 79] (1957)).

The reference gives rise to conflicting inferences. Although the reference was made in the context of a listing of permitted, not prohibited, disclosures, it could be argued that the framers regarded any use of wiretapped evidence to refresh recollection as being permitted only by § 2517(3) and therefore as being prohibited by § 2518(8)(a) when that section applied. Yet such an interpretation would convert the reference to *Monroe* from an approving to a disapproving one; moreover it would ignore the phrase "at trial" in the second sentence of the quoted extract. We read the report as meaning that when the procedures of the proposed statute were followed, transcripts of intercepted communications might be disclosed *at trial* and also might be there used for the purpose of refreshing recollection although *Monroe* did not involve such use; we do not think Congress meant to overrule the *Monroe* holding that even illegal wiretaps could be used, before trial, to refresh a witness' recollection of his own conversations.

Appellant has made no claim that violation of the statutory requirement for prompt sealing operates retroactively to make an otherwise proper interception of Mengrone's own conversation an illegal search under the Fourth Amendment.[3] No such claim would be sustainable. See *United States v. Burke*, 517 F.2d 377, 385–86 (2 Cir. 1975) (failure of warrant to require search within 10 days and to direct execution by federal agent and return to federal magistrate held insufficient to require exclusion of seized evidence); *United States v. Amendola*, 558 F.2d 1043 (2 Cir. 1977) (failure to provide defendant with post-interception notice of placement of pen register on telephone line). See also *United States v. Cafero*, 473 F.2d 489, 499–500 (3 Cir. 1973), *cert. denied*, 417 U.S. 918, 92

---

**3.** As said in appellant's reply brief, p. 2:
> The sealing requirement is not a 4th Amendment exclusionary device, but a statutory safeguard designed to indicate the necessary reliability of evidence . . . .

S.Ct. 1769, 32 L.Ed.2d 117 (1974) ("a failure to comply with certain procedural requirements of F.R.Cr.P. 41 has been held not to amount to deprivation of Fourth Amendment rights necessitating suppression"). Cf. *United States v. Donovan,* 429 U.S. 413, 434–435, 97 S.Ct. 658, 671, 50 L.Ed.2d 652 (1977) (government's inadvertent failure to comply with "discretionary" notice provision of wiretapping statute does not justify suppression of evidence derived from authorized interception); *United States v. Fury, supra,* 554 F.2d at 529 (failure to comply with statute's "mandatory" notice requirement does not justify suppression of wiretap evidence unless prejudice is shown).

The judgment is affirmed.