UNITED STATES of America, Appellee,

v.

William DONLAN, Defendant-Appellant.

No. 1258, Docket 86–1499.

United States Court of Appeals, Second Circuit.

Argued June 1, 1987.

Decided July 31, 1987.

John J. Keefe, Jr., New Haven, Conn. (Michael J. McClary, Lynch, Traub, Keefe and Errante, New Haven, Conn., on the brief), for defendant-appellant.

James T. Cowdery, Asst. U.S. Atty., Bridgeport, Conn. (Stanley A. Twardy, Jr., U.S. Atty., on the brief), for appellee.

Before NEWMAN, CARDAMONE, and WINTER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal presents the issue whether the sealing and disclosure provisions of the federal wiretap statute, 18 U.S.C. §§ 2517, 2518(8)(a) (1982), prohibit trial testimony concerning the results of police action supported by probable cause that was based on wiretapped conversations, the recording tape of which was improperly sealed. The issue arises on an appeal by William Donlan from a judgment of the District Court for the District of Connecticut (Warren W. Eginton, Judge) convicting him, after a jury trial, of conspiracy to distribute co-caine in violation of 21 U.S.C. § 846 (1982). We conclude that the trial testimony was not prohibited by the wiretap provisions and therefore affirm the conviction.

On August 6, 1984, agents of the Drug Enforcement Administration (DEA) obtained from the District Court an order allowing a 30–day wiretap on the telephone of Betty Guevara. During the course of this wiretap the agents intercepted conversations between Guevara and Donlan concerning drug transactions. One conversation indicated that on August 30 Donlan would be meeting with Guevara concerning a transaction. Relying on this information, DEA agents followed the car Donlan was driving and stopped it just after the car left Guevara's house. As a result of the stop, the agents seized a bottle of lactose found in a search of the car and also heard Donlan make incriminating statements. Donlan was not arrested at that time but was arrested on September 17, at which time he made an additional incriminating statement. The wiretapping ended on September 5, but the tape recordings of the intercepted conversations were not sealed until September 19.

After indictment, Donlan moved to suppress the taped recordings of the wiretapped conversations and any evidence derived therefrom on the ground that the sealing of the tapes had been unjustifiably delayed in violation of subsection 2518(8)(a). That motion was granted on June 20, 1985. *United States v. Rodriguez*, 612 F.Supp. 718 (D.Conn.), *reh. denied*, 616 F.Supp. 272 (D.Conn.1985). On the Government's pretrial appeal, we reversed, *United States v. Rodriguez*, 786 F.2d 472 (2d Cir.1986), concluding that the Government's justification for the 14–day sealing delay was legally sufficient. We remanded to afford the defendants an opportunity to challenge the factual representations in the affidavits that the Government had submitted to justify the sealing delay. On remand, the District Court initially denied the motion to suppress but subsequently reopened the matter at the request of defendant Donlan and ultimate-

ly granted the motion.[1] In doing so, the District Judge limited his ruling to a suppression of the tapes themselves, as distinguished from the fruits of the wiretap. This limited ruling precipitated a further motion from Donlan, focusing the Court's attention upon the original request to suppress derived evidence, specifically, the tangible evidence and statements obtained on August 30 and September 17, 1984. The District Court denied this motion. At trial, the lactose bottle seized on August 30 and testimony concerning Donlan's statements on that date and on September 17 were admitted into evidence. The jury convicted, and this appeal ensued.[2]

The federal wiretap statute contains two provisions relevant to Donlan's claim that the challenged evidence should have been excluded because it was derived from a wiretap that was unlawful for lack of prompt sealing. Section 2517 sets out in three subsections permissible uses of information obtained "by any means authorized by [the wiretapping provisions]." Subsection (1) permits a law enforcement officer to disclose the contents of tapped conversations or evidence derived therefrom to another law enforcement officer in the performance of the duties of either officer. Subsection (2) permits a law enforcement officer to use the contents of tapped conversations or evidence derived therefrom in the performance of his duties. Subsection (3) permits any person to disclose the contents of tapped conversations or evidence derived therefrom while giving testimony in any federal or state proceeding. Subsection 2518(8)(a) requires prompt sealing of the recording of any tapped conversations and further provides:

The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire or oral communication or evidence derived therefrom under subsection (3) of section 2517.

These provisions create some tension. Subsections (1) and (2) of section 2517 permit law enforcement officers to use and disclose for use by other officers the contents of tapped conversations. The legislative history explicitly indicates that one of the uses contemplated under subsection (2) would be "to establish probable cause for arrest ... [or] probable cause to search." S.Rep. No. 1097, 90th Cong., 2d Sess. 99, *reprinted in* 1968 U.S.Code Cong. & Admin.News 2112, 2188 (citations omitted). And, as we have previously observed, "Use permitted by § 2517(2) is not subject to the strictures of § 2518(8)(a)." *United States v. Ricco*, 566 F.2d 433, 435 (2d Cir.1977), *cert. denied*, 436 U.S. 926, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978). On the other hand, subsection 2518(8)(a) prohibits derivative use of the contents of untimely sealed recordings "under" subsection 2517(3), which governs disclosure "while giving testimony." *See United States v. Ricco, supra*, 566 F.2d at 435. Thus, if subsection 2518(8)(a) were applied literally, it would bar a law enforcement officer from testifying concerning evidence he obtained during an arrest or search based on untimely sealed conversations, even though subsection 2517(2) would allow the officer to use the untimely sealed conversations as probable cause to make the arrest or search. This is precisely the position urged by Donlan on this appeal.

1. It is not entirely clear why the motion was granted. Our remand instructed that "if [the representations in the Government's affidavits] are not challenged, or, if challenged, are credited, the motion to suppress should be denied." 786 F.2d at 479. We do not understand the District Judge to have found that the representations in the affidavits were unworthy of belief. Apparently, the Court concluded that further development of the record established the absence of due diligence in sealing the tapes. Though we have some doubt on that score, the Government has not sought to uphold the judg-

ment of conviction by asserting error in the ruling suppressing the tapes, an opportunity available to it despite its decision not to appeal the second suppression ruling before trial. In the absence of a claim of error, we decline to consider the matter *sua sponte.*

2. Donlan's co-defendant, Michael Rodriguez, was also convicted. His conviction, not raising any issues concerning wiretapping, was affirmed in a summary order. *United States v. Rodriguez,* No. 87–1047 (2d Cir. June 2, 1987).

We think it unlikely that Congress intended subsection 2518(8)(a) to be construed with such literalness or, to put the matter somewhat differently, that Congress intended "derived" in this subsection to mean causally related to an untimely sealed intercept by a chain of events that includes an arrest or search lawfully based on untimely sealed intercepts. Since subsection 2517(3) governs disclosure "in any proceeding held under the authority of the United States or of any State or political subdivision thereof," a literal reading of subsection 2518(8)(a) would prevent a law enforcement officer from using untimely sealed conversations in testifying before a judicial officer to obtain an arrest or search warrant, even though Congress clearly intended the officer to use such information, without the restriction of subsection 2518(8)(a), to establish probable cause for an arrest or a search. It cannot be that Congress intended to permit untimely sealed conversations to be used as probable cause for arrests and searches only when those arrests and searches were conducted without a warrant.

We previously declined to suppress evidence in the extremely analogous circumstances presented in *United States v. Fury*, 554 F.2d 522 (2d Cir.1977), *cert. denied*, 436 U.S. 931, 98 S.Ct. 2831, 56 L.Ed.2d 776 (1978). *Fury* concerned provisions of the New York wiretapping statute, which was modeled on the federal statute, *id.* at 532, and uses language virtually identical to the federal law provisions at issue on this appeal. *See* N.Y.Crim.Proc.L. § 700.65 (McKinney 1984 & Supp. 1987). In *Fury* a wiretap on Myron Schnell had terminated on April 16, 1974, but the tapes had not been sealed until May 1, 1974. Conversations intercepted during the Schnell tap implicated Thomas Fury. A wiretap order was issued for a tap on Fury's telephone. Conversations from the Schnell tap were used as part of the probable cause to obtain the order for the Fury tap. Fury unsuccessfully sought to suppress the tapes of both the Schnell and Fury taps and then pled guilty, reserving the right to appeal the denial of his suppression motion. This Court affirmed.

Pertinent to the pending appeal is the portion of the *Fury* opinion rejecting the argument that the Fury tape should have been suppressed because it was derived from the Schnell tap, which was tainted because of an unjustified delay in sealing. Judge Gurfein first noted the Government's concession that the delay in sealing was unjustified and that the Schnell tapes could therefore not have been used at trial. Nevertheless, he concluded, "The Schnell tapes, even with the fourteen-day unexplained delay in sealing, provide a proper basis for a finding of probable cause to support the issuance of the Fury wiretap order, even though the Schnell tapes might not have been admissible in evidence." *Id.* at 532. Consequently, the denial of the motion to suppress the Fury tapes was upheld.

Donlan minimizes the significance of *Fury*, contending that it decided only that the tainted Schnell tapes were lawfully used to obtain the order for the Fury tapping and implied nothing as to whether evidence derived from an untimely sealed tape could be presented as evidence at trial. We disagree. On the appeal following a guilty plea with a reservation of right to challenge the denial of the motion to suppress the Fury tapes, the Court of Appeals had no reason to confine its consideration to the issue of whether the Schnell tapes had been properly used as probable cause to obtain the order for the Fury tapping. Indeed, a ruling limited to that issue would have been an advisory opinion, without significance to the ultimate issue before the Court as to whether Fury's conviction should have been affirmed. The appeal was taken to persuade this Court that the denial of the motion to suppress the Fury tape was an error that warranted reversal of the conviction, an opportunity to withdraw the guilty plea, and an opportunity to proceed with a trial at which the Fury tape could not be admitted into evidence. By affirming the conviction, the Court was necessarily deciding not only that the late sealing of the Schnell tape did not invalidate the order for the Fury tapping but also that the Fury tape, derived from the

Schnell tape, was available as trial evidence; if the Court had thought that the Fury tape should not have been available as trial evidence, Fury's conviction would have been reversed. The fact that Donlan's appeal arises after a trial and the *Fury* appeal arose after a conditional guilty plea is without significance in determining the effect of the *Fury* decision on Donlan's claim.

However, the implicit holding in *Fury* that the Fury tape was available for use at trial does not necessarily mean that the evidence Donlan challenges is not tainted by the delay in sealing the Guevara tape. In *Fury* the information from the Schnell wiretap was presented to a judicial officer for consideration in the issuance of a new wiretap order. Here the information from the Guevara wiretap was used by the DEA agents as reasonable suspicion justifying the stop of Donlan's car and as probable cause justifying the search of the car. We do not think that distinction justifies a different result. The opinion in *Fury* gives ample indication that it is broadly allowing derivative use of wiretapped conversations that could not themselves be offered in evidence for lack of timely sealing:

> [T]hough in [*United States v.*] *Giordano*, [416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974)], a tape derived from a prior unauthorized tape was suppressed, this was in the context of the authorization deemed to be central to the statutory scheme. *Giordano* did not deal with postintercept requirements, nor did [*United States v.*] *Gigante*, [538 F.2d 502 (2d Cir.1976)], deal with the derivative, as distinguished from testimonial, use of tapes which had not been timely sealed.

*United States v. Fury, supra,* ·554 F.2d at 532.

The plain import of this passage is that the prohibition in subsection 2518(8)(a) on

derivative use at trial of improperly sealed tapes is not to be applied strictly to prohibit use of all evidence that can be connected through a chain of causation to a wiretap tainted by improper sealing of a tape. This does not mean that a sealing violation bars use at trial of only the taped conversations. The Government cautiously concedes that a sealing delay would bar use at trial of "evidence derived from the tapes, such as transcripts, duplicate tapes, work copies and testimonial summaries." Brief for Appellee at 45. Whether "derived" in subsection 2518(8)(a) would also cover evidence mentioned in tainted interceptions and found at a location mentioned in such interceptions need not now be considered. It is sufficient to hold, in light of *Fury,* that a sealing delay does not require the exclusion at trial of evidence, not mentioned in intercepted conversations, obtained when officers make a stop and search on the basis of such conversations. The paramount purpose of the sealing requirement—to reduce the risk of tampering with tapes, *see* S.Rep. No. 1097, *supra,* at 104–05, *reprinted in* 1968 U.S.Code Cong. & Admin.News 2193–94—will not be advanced by reading "derived" to bar use at trial of the evidence challenged in this case.

It would be especially unwarranted to apply subsection 2518(8)(a) to bar use of the challenged evidence on the facts of this case in light of the sequence of pertinent events. The intercepted conversations were used as justification for the stop and search of Donlan's car on August 30. The wiretap did not end until September 5. Thus the use of the wiretapped conversations to obtain derivative evidence occurred before a sealing obligation even arose and obviously long before the point at which the delay in meeting that obligation became unjustified.[3] It would require a needlessly rigid construction of subsection 2518(8)(a)

---

3. One item of challenged evidence—the incriminating remark made by Donlan when he was arrested on September 17—was made during the interval between the end of the wiretap on September 5 and the sealing on September 19. Even if the delay in sealing became unjustified by September 17, reversal because of the admission of the September 17 remark would not be

warranted. First, the obtaining of that evidence was not an exploitation of the illegality in failing to seal the tapes in a timely fashion; the September 17 remark was obtained as a result of the evidence lawfully obtained on August 30. Second, the admission at trial of the remark made on September 17, even if error, was harmless.

and an undue emphasis on deterrence to read the derivative use proscription of the subsection to bar evidence resulting from intercepted conversations used to obtain that evidence several days before the sealing requirement was violated.[4]

The judgment of conviction is affirmed.

---

**4.** The Government suggests that the decision in *Fury* can be viewed as upholding derivative use occurring only before a sealing delay became unjustified. We doubt that *Fury* relied on this reasoning. In *Fury* the Schnell wiretap ended on April 16, and the sealing was delayed until May 1. The intercepted conversations were used to obtain the Fury wiretap order "[i]n April." *United States v. Fury, supra,* 554 F.2d at 524. The opinion gives no indication that the Fury wiretap order was applied for at a date early enough in April to be before the point at which the sealing delay became unjustified.