87 F.Supp. 970 (1950)
UNITED STATES
v.
LEWIS et al.
Cr. No. 476.
United States District Court District of Columbia.
January 11, 1950.
*971 George Morris Fay, United States Attorney, William Hitz, Assistant United States Attorney, and Edward L. Carey, Assistant United States Attorney, all of Washington, D. C., for the United States.
William H. Collins and Bernard Margolius, both of Washington, D. C., for defendant William Lewis.
Charles E. Ford, of Washington, D. C., for defendant Attilio Acalotti.
Myron G. Ehrlich, of Washington, D. C., for defendant Frank Billeci.
HOLTZOFF, District Judge.
The defendants in this case have been indicted for a violation of laws forbidding certain gambling operations. The Court has undertaken a preliminary hearing to determine the admissibility of certain evidence claimed by the defendants to have been obtained by the Government in violation of the Federal Communications Act, Act of June 19, 1934, Title 47, U.S.C.A. § 605.
Ordinarily objections to admissibility of evidence must be determined when the evidence is tendered at the trial, and not in advance of trial. There are, however, two exceptions to this rule. One is the familiar instance of evidence claimed to have been secured by unlawful search and seizure. In that case the objection must be raised in advance of trial by a motion to suppress the evidence. This is prescribed by the Federal Rules of Criminal Procedure, Rule 41, subsection (e), 18 U.S. C.A.
The second exception involves the rather unusual situation in which the defendant claims that certain evidence should be excluded on the ground that it has been obtained in violation of the Federal Communications Act, 47 U.S.C.A. § 151 et seq. The Supreme Court suggests, in Nardone v. United States, 308 U.S. 338, at page 341, 60 S.Ct. 266, 84 L.Ed. 307, that this matter should be determined preliminarily, in order not to interfere with the orderly progress of the trial. Accordingly, the present preliminary hearing has been undertaken pursuant to sanction of that ruling.
The Federal Communications Act contains the following clause: "No person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."
The meaning of this provision has been discussed a great deal, not only in the reported cases, but also by commentators. The provision is one of many clauses contained in a long sentence constituting a single paragraph. I dare say that the original purpose of this clause was to prevent a telephone switchboard operator from revealing the substance of a conversation overheard by him, as well as to preclude an employee of a telegraph or a radio company from disclosing the contents of a telegram or a radiogram.
The Supreme Court has, however, by construction, carried the statute to a point farther than its apparent objective. It is now well settled that evidence obtained by means of a violation of the foregoing provision of the Federal Communications Act, as well as evidence secured as a result of information derived through such *972 a violation, is not admissible in a Court of the United States. This was determined in the cases of Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314; Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; and Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298.
What then constitutes a violation of the statute? In the Nardone and Weiss cases, Government agents, by means of an apparatus surreptitiously attached to a telephone wire, at a point between its termini, overheard telephone conversations passing over the line, unbeknownst to either party to the conversations. This is what is known in popular parlance as wire tapping. Listening to a conversation in this manner and then divulging it, even if the disclosure takes place in court on the witness stand, is banned by the statute, and evidence so obtained is not admissible. I am inclined to believe that it is immaterial whether the listening mechanism is physically attached to the wire or is placed in close proximity to it and operates by induction coils.
I must say that at the opening of this hearing I was under the impression that an attempt would be made to show that Government investigators in this case had tapped some one's telephone line in the manner just indicated. I do not mean that counsel said anything to mislead me; but I gathered that impression. Had such an activity taken place, this Court would have frowned on it, for reasons that are in addition to the illegality of such evidence. Entirely aside from the law of evidence, it is wholly ethical, so many think, and so do I, to resort to wire tapping in a matter involving the national security or the safety of the country, or in a case involving a human life, such as kidnapping. I should seriously doubt, however, the propriety of having recourse to this drastic method of investigation in connection with a crime of lesser importance. To be sure, wire tapping is only a form of eavesdropping, and eavesdropping, as a means of detecting crime, is neither illegal nor immoral, any more than is the use of a pretense or a disguise. Nevertheless, tapping telephone wires may be fraught with such serious consequences and it is such a far-reaching invasion of privacy that resort should not be had to it except for the limited purposes previously suggested.
In this case, however, the evidence adduced at this hearing shows that there has been no wire tapping. The defendants have shown that on three occasions telephone conversations between a Government witness and certain unknown persons were recorded by representatives of the Government. In one instance the recording was accomplished by a mechanical device attached to or placed in proximity to the telephone instrument. In the other two cases it was done by a stenographer who listened to the conversation on an extension telephone and took notes in shorthand. It is important to observe that in each instance one of the parties to the conversation knew it was being recorded and either requested that this be done or acquiesced in that course.
The question, then, is presented whether the recording of a telephone conversation with the consent of one of the parties to it constitutes a violation of the Federal Communications Act. Obviously it involves no impropriety. Many men of affairs are accustomed to have their secretaries listen on an extension telephone and take notes of their telephone conversations. To suggest that the testimony of a secretary as to the contents of a conversation so recorded is inadmissible seems startling. By the same token, the same is true of conversations mechanically recorded at the behest or with the acquiescence of one of the parties to the conversation. Clearly the statute was not intended to exclude testimony of a conversation recorded in either of these two ways.
It is a fundamental canon of statutory construction that a legislative enactment must be so interpreted as to carry out the legislative will and in a manner that would not reach an absurd result. The Supreme Court has not passed on this question. Neither has the United States Court of Appeals for the District of Columbia. The subject is of novel impression in this *973 jurisdiction. This Court lacks the benefit of guidance from any binding authority.
Research has disclosed only two decisions on this precise point in the Federal Courts, one in the Third Circuit and one in the Second Circuit. In the Third Circuit there is a decision by a district judge in the United States District Court for the Western District of Pennsylvania, in United States v. Yee Ping Jong, 26 F.Supp. 69, 70. The decision was rendered by Judge Gibson, a judge of many years of practical experience. Judge Gibson held that the recording of a telephone conversation in the manner I have just described is not a violation of the statute. His reasoning appears exceedingly persuasive, and for this reason I shall quote a portion of his opinion. He said:
"The manner in which the conversation in question was recorded does not seem to present such an interception as is contemplated by the quoted statute. Webster's New International Dictionary defines the verb `intercepted' in part as follows: `To take or seize by the way, or before arrival at the destined place; * * *'
"The call to the defendant was made by Agent White, and the conversation between his interpreter and the defendant was not obtained by a `tapping of the wire' between the locality of call and the locality of answer by an unauthorized person, but was, in effect, a mere recording of the conversation at one end of the line by one of the participants. It differed only in the method of recording from a transcription of a telephone conversation made by a participant."
In my opinion the statute is violated if a third person, unbeknownst to either party to the conversation, listens to what passes over the line and then divulges what he has heard, or, if the third person causes the conversation to be recorded by a mechanical or electrical device, without the knowledge of either party to the conversation, and then discloses what has been recorded. I hold that it is not a violation of the statute if the conversation is recorded, manually, mechanically, or electrically, at the instance of or with the consent or knowing acquiescence of one of the parties to it.
I am not unmindful of the fact that the United States Court of Appeals for the Second Circuit, by a divided vote, reached a result opposite to that reached by Judge Gibson and which is now being reached by me, in United States v. Polakoff, 112 F.2d 888, 891. The opinion in that case was written by a truly great judge, Judge Learned Hand, to whose views great deference should be shown. Judge Augustus Hand concurred in a separate opinion, quite obviously with some regret, reluctance and hesitation. A strong dissenting opinion was written by Judge Charles E. Clark, who refers to Judge Gibson's views and expresses agreement with them. He also makes the following very cogent observations:
"There can be no real distinction  there is none suggested in the statute or by common sense  between these recordings and a transcription made by a private secretary over the telephone in an outer office, or by a servant on an upstairs extension in a house, or even by a person listening at the telephone receiver held by the party to the conversation. Nor can it be of importance whether the transcriber or the party first makes the suggestion for the recording; in either event it is the party who has the power to direct or prohibit its transcription. Neither is it important whether evidence of the conversation comes from the mechanical device of a record or from testimony of those directed to listen in, except that the mechanical device gives the more trustworthy evidence."
I agree with Judge Gibson and with Judge Clark.
Further, I find as a fact that it has not been established that any of the three conversations in question contained any information that led to obtaining any evidence by the Government in this case.
There is still another aspect of this matter to be passed upon at this stage. The defendants have offered evidence at this hearing that certain premises were raided by deputy United States marshals; that after the raid the deputies remained in the premises and answered a number of incoming telephone calls; that in the course of these conversations certain telephone *974 numbers were mentioned by persons at the other end of the line, and that by tracing these numbers the Government was able to ascertain the names of the subscribers, and to call them as witnesses.
The defendants contend that the action of the deputy marshals in picking up the telephone and answering when the bell rang, and in listening to what the party calling said, and participating in the conversation, was a violation of the Act. This contention is also overruled on the basis of Judge Gibson's decision in the case cited, supra. It will be recalled that Judge Gibson held that the word "intercept" as used in the statute is limited to taking or seizing by the way or before arrival at the destined place. Clearly on that basis the action of the deputy marshals did not constitute an interception within the meaning of the statute. To substitute oneself for the receiver of the telephone call is not an interception.
It is further urged, however, that there is another clause of Section 605 of the Federal Communications Act that is applicable to this aspect of the matter. This clause reads as follows: "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by wire or radio and use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto."
It seems to the Court that obviously the deputy marshal did not use the conversation for his own benefit. The phrase "for the benefit of another" naturally means for another person. I do not think that this includes the Government, and for that reason I do not believe that this clause is applicable. While it is not controlling, it is nevertheless persuasive that the Supreme Court of California, in People v. Kelley, 22 Cal.2d 169, 137 P.2d 1, held that evidence obtained in this manner was not secured in violation of the Federal Communications Act and was, therefore, admissible.
There is another point to be considered in this connection. The defendants Acalotti and Billeci deny that the telephone wire over which the deputy marshals listened was their telephone line or that they had any control or interest in that line. The Court holds that in view of this fact no right of the defendants Acalotti or Billeci was violated and that they have no legal standing to complain of this action of the deputy marshals. This position is sustained by the ruling of the Supreme Court in Goldstein v. United States, 316 U.S. 114, 120, 62 S.Ct. 1000, 86 L.Ed. 1312.
The motions of the defendants to exclude evidence on the ground that it has been procured in violation of the Federal Communications Act is denied.