Floyd Linn RATHBUN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 5314.

United States Court of Appeals
Tenth Circuit.

Aug. 23, 1956.

Rehearing Denied Oct. 1, 1956.

Thomas K. Hudson, Denver, Colo., for appellant.

John S. Pfeiffer, Asst. U. S. Atty., Colorado Springs, Colo. (Donald E. Kelley, U. S. Atty., Denver, Colo., was with him on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

Appellant was tried and convicted in the United States District Court for the District of Colorado on a two count indictment charging him with violations of Title 18 U.S.C.A. § 875(b) and § 875(c). Count one charged that appellant knowingly transmitted an interstate communication containing a threat with the intent to extort a thing of value. Count two charged him with knowingly transmitting in interstate commerce a communication containing a threat to injure the person of Everett Henry Sparks. Rathbun has appealed from a conviction and sentence on both counts.

Eight assignments of error are urged for reversal. They are: (1) The court erred in denying defendant's motion to dismiss count one of the indictment for a fatal variance between the indictment and proof; (2) the court erred in refusing to admit into evidence defendant's tendered exhibits A and B; (3) the court erred in admitting into evidence the Government's exhibit 2; (4) the court erred in failing to give witnesses excluded from the courtroom a cautionary instruction; (5) the court

erred in refusing to allow the defendant to offer certain rebuttal testimony; (6) the court erred in charging the jury and in refusing to give a requested instruction; (7) the court erred in denying defendant's motion to strike the testimony of witness Huskins; and (8) the court erred in admitting the testimony of witnesses Maybers and Huskins. We have given careful consideration to each of these assignments of error. It is our conclusion that only assignments of error No. 1 and No. 8 present questions which need to be discussed in detail. We conclude that the remaining assignments of error did not substantially affect appellant's rights.

■ The indictment charged that the thing of value attempted to be extorted was 100,000 shares of the stock of Western Oil Fields, Inc., whereas the testimony referred to a stock certificate for 120,000 shares of stock in that company and made no reference to 100,000 shares. The law is well established that only substantial variance between allegations and proof affects a defendant's rights and that immaterial variations will be disregarded. All that is required is that the indictment be so framed that the accused is definitely informed of the charges against him and can prepare his defense and not be taken by surprise by the evidence offered at the trial.[1] The gist of the offense was that defendant sought to extort stock of Western Oil Fields, Inc., by means of threats sent over telephone lines. The variance between the 100,000 shares alleged and the 120,000 shares of which proof was offered is wholly immaterial and in no way tended to prejudice the defendant in the preparation of the defense.

A more difficult problem arises with respect to the admission of the testimony of Robert L. Maybers and Herman R. Huskins who at the invitation of Sparks listened in on an extension phone to a telephone conversation he had with Rathbun and were permitted to testify to threats they heard Rathbun make against Sparks in that phone conversation. Rathbun and Sparks had been partners. Bitterness developed between them. Sparks had in his possession 120,000 shares of stock of Western Oil Fields, Inc. The difficulty out of which the alleged threats arose was that Rathbun, who was in New York to obtain a loan, apparently needed this stock as security and Sparks refused to release it. They had several telephone conversations preceding the one in question. It was arranged that Rathbun would call Sparks at his home in Pueblo, Colorado, from New York at 1:00 a.m. in the morning. Sparks arranged with the Pueblo Police Department for Officers Maybers and Huskins to come to his home and listen in on an extension phone. As stated, they were permitted to testify over objection by defendant to what they heard Rathbun say in this conversation.

■ 47 U.S.C.A. § 605 in pertinent part provides, "* * * and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person * * *." That is what is commonly known as the "Wire Tapping Statute." It is without dispute that one who intercepts a telephone conversation without the consent of the sender, while the conversation is being sent over the telephone wire, may not testify to such communication without the consent of the sender. So far there is no conflict in the decisions. The difficulty arises with what constitutes interception and who is a sender with respect to the question of consent.

■ Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322, is one of the last cases in which this statute was considered by the Supreme Court. While we do not think that it necessarily controls the disposition of the question presented to us because of a

1. Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314; Mathews v. United States, 8 Cir., 15 F.2d 139; Keys v. United States, 8 Cir., 126 F.2d 181.

difference in the facts, it does lay down certain fundamental principles which are controlling. It makes it clear that only the sender of the message is protected and that his communication is immune from interception and subsequent publication based upon such interception only while it is being transmitted over the wire and before it comes into the possession of the other party to the conversation. In the Goldman case the eavesdroppers had a delicate listening device attached to the wall of a room by means of which they could hear conversations between the parties in the room and also heard the words spoken by one of them into a telephone in a telephone conversation with a person at the other end of the line. What was specifically decided was that the words spoken into the telephone were heard the instant they were spoken and were therefore heard before they started their journey over the telephone line, and that there was therefore no interception of a message over the telephone line while in transit. We do not think it can seriously be contended that one who is in a room and hears words spoken into a telephone, or who is in an adjoining room and hears such words spoken even if by the aid of a mechanical device, is intercepting a message being sent over the wire.

There have been a goodly number of listening in on extension telephone cases before the lower courts and they are in sharp and irreconcilable conflict as to whether such listening without the consent of both parties constitutes a violation of the Act. Most of the courts have held that where officers with the consent of one of the parties have listened in on extension phones they may testify to what they heard.[2] The Second Circuit, however, in two cases[3] has held to the contrary. No helpful purpose would be served by analyzing all of these cases which have spoken on this question. Flanders v. United States, 6 Cir., 222 F. 2d 163, is a well reasoned case and clearly shows the line of cleavage.

■■■■ We agree with Judge Hand that both parties to a phone conversation are alternately senders and receivers. That question, however, is not material here because the conversation in question was initiated by Rathbun and it must be held that he was the sender and that what he said could not be intercepted in transit and thereafter testified to by the one intercepting it without his consent. We do not mean to say that violation of the "Wire Tapping Act" may not result from listening in on extension telephones. Whether such listening in constitutes a violation of the Act would depend on where the extension phone was attached. In the Reitmeister case, supra, the majority said [162 F.2d 694]: "* * * we cannot see why an existing lead off the main circuit was different from a 'tap' into the wire, made ad hoc." It may be possible as far as we know to attach an extension phone so that the message passing over it reaches the ear of the listener before it reaches the ear of the one carrying on the conversation and for whom it is intended. If such is possible, in such case it would constitute an interception. The mechanics of attaching extension phones and the manner in which the extension phone in question was attached are not established by the record. In view of that, we must take as the facts of this case the statement of the court upon which it predicated its ruling. The court said: "They both heard it simultaneously but there wasn't an interception before it reached the ears of the intended receiver of the conversation and the witness. It may have been simultaneous but there wasn't an interception between the lips of one and the ears of

---

2. United States v. Bookie, 7 Cir., 229 F.2d 130; United States v. White, 7 Cir., 228 F.2d 832; Flanders v. United States, 6 Cir., 222 F.2d 163; United States v. Pierce, D.C., 124 F.Supp. 264; United States v. Sullivan, D.C., 116 F.Supp.

480; United States v. Guller, D.C., 101 F.Supp. 176; United States v. Lewis, D.C., 87 F.Supp. 970.

3. United States v. Polakoff, 112 F.2d 888, 134 A.L.R. 607; Reitmeister v. Reitmeister, 162 F.2d 691.

the other." No objection was made to that statement of fact. Under those facts, we think the Goldman case controls and that the court was correct in concluding that Rathbun's conversation was not intercepted by these two police officers before it reached the ears of Sparks.

Affirmed.

MURRAH, Circuit Judge (concurring specially).

As I read the Goldman case, the question of interception becomes a study in mechanics; and that "overhearing" an interstate telephone conversation by means of a conventional extension receiver at the terminus of the message, is not an interception within the meaning of the statute.