Harold W. MARVIN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 6330.

United States Court of Appeals
Tenth Circuit.

June 3, 1960.

James W. Wilson, of Wilson & Boltz, Denver, Colo., for appellant.

Richard P. Matsch, Asst. U. S. Atty., Denver, Colo., (Donald G. Brotzman, U. S. Atty. and Jack K. Anderson, Asst. U. S. Atty., Denver, Colo., with him on the brief), for appellee.

Before PICKETT and BREITEN-STEIN, Circuit Judges, and SAVAGE, District Judge.

PICKETT, Circuit Judge.

The defendant, Harold W. Marvin, was convicted on six counts of an indictment charging him with violation of the mail fraud statute, 18 U.S.C.A. § 1341. He was sentenced to two years imprisonment on each count, the sentences to run concurrently. This appeal presents the single question of whether there was a fatal variance between the allegations of the indictment and the proof.

In substance, the indictment alleges that while Marvin was in the novelty business in Denver, Colorado, he devised a scheme to defraud Amberson Investment Corporation by assigning to it fictitious accounts receivable as collateral security for loans. Four counts charge that to further the fraudulent scheme, Marvin "caused to be placed in an authorized depository for mail matter" certain letters. Two of the counts allege that he "caused to be taken and received from an authorized depository for mail matter" certain letters. The sufficiency of the evidence to establish both the scheme to defraud and the delivery of identified letters through the mails is not questioned.

Title 18 U.S.C.A. § 1341, provides in part:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises * * *, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon * * * any such matter or thing, shall be fined * * * or imprisoned."

Defendant contends that this statute creates three separate crimes, in that it prohibits the carrying out of a fraudulent scheme by (1) placing mail matter in an authorized depository; (2) receiving or taking mail matter from an authorized depository; or (3) knowingly causing the delivery of mail matter according to the direction thereon. From this he argues that there is a fatal variance between the indictment and the proof because the indictment charged the first two crimes, whereas the proof established, if anything, only the commission of the third. In particular, he maintains that at most the proof shows only that certain mail matter was caused to be sent and delivered by the Post Office Department and that this constitutes a distinct offense from those charged.

Of course, if the proof established the defendant's guilt of a crime with which he had not been charged, the conviction could not stand.[1] But we are of the opinion that § 1341 creates only a single offense which can be committed in any one or more of the three ways mentioned. Otherwise, the perpetrator

---

1. United States v. Tandaric, 7 Cir., 152 F.2d 3, certiorari denied 327 U.S. 786, 66 S.Ct. 703, 90 L.Ed. 1012; 27 Am.Jur., Indictments and Informations, § 177.

of a fraudulent scheme could be punished for two, or possibly three, separate crimes for mailing a single letter. This case is not like Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405, where Congress intended to create separate offenses in dealing more strictly with traffic in narcotics. We agree with Holdsworth v. United States, 1 Cir., 179 F.2d 933, 936, where the court, in considering § 1341, said:

> "We do not think that the disjunctive phrases in the statute charge three separate crimes. We think that they describe three alternative means by which one may commit a single crime, namely, the use of the mails to defraud." [2]

We also conclude that the allegations and proof substantially coincide with respect to the means used in perpetrating the offense.[3] The settled rule is that a variance is not fatal unless the defendant could not have anticipated from the indictment what the proof would be, or unless a conviction on the indictment would not bar a subsequent prosecution for the same offense.[4] As stated in Rathbun v. United States, 10 Cir., 236 F.2d 514, 516, affirmed 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134:

> "The law is well established that only substantial variance between allegations and proof affects a defendant's rights and that immaterial variations will be disregarded. All that is required is that the indictment be so framed that the accused is definitely informed of the charges against him and can prepare his defense and not be taken by surprise by the evidence offered at the trial."

No variance, much less a fatal one, exists in this case. The first count charged that on May 21, 1956, the defendant caused Amberson Investment Corporation to place in an authorized mail depository at Denver a letter addressed to John M. Shepherd, Springville, Utah. The president of Amberson Investment testified that on May 21, he personally placed in an office building mail chute a letter to Shepherd advising him of Marvin's assignment to Amberson of an account receivable, purportedly arising from a sale of merchandise by Marvin to Shepherd. Testimony as to his receipt of this letter in Springville, Utah, was given by Shepherd. Each of the remaining five counts likewise identified a letter by date, sender, and addressee and alleged that defendant either caused it to be placed in, or caused it to be received from, an authorized mail depository in Denver. With respect to these counts, the evidence showed that in order to keep alive the impression that Shepherd was

---

2. The court rejected the contrary view suggested by dicta in United States v. Guest, 2 Cir., 74 F.2d 730, 731.

3. The gist of a mail fraud case lies in the means used in executing the fraudulent scheme. Palmer v. United States, 10 Cir., 229 F.2d 861, certiorari denied 350 U.S. 996, 76 S.Ct. 546, 100 L.Ed. 861; Webb v. United States, 10 Cir., 191 F.2d 512; Crosby v. United States, 10 Cir., 183 F.2d 373, certiorari denied 340 U.S. 906, 71 S.Ct. 274, 95 L. Ed. 656; United States v. Crummer, 10 Cir., 151 F.2d 958, certiorari denied 327 U.S. 785, 66 S.Ct. 704, 90 L.Ed. 1012; Parr v. United States, 5 Cir., 265 F.2d 894, certiorari granted 361 U.S. 912, 80 S.Ct. 254, 4 L.Ed.2d 182. Each separate use of the mails in effecting the scheme to defraud constitutes a violation of the statute. Palmer v. United States, supra.

4. Caldron v. United States, 10 Cir., 269 F.2d 416; Rathbun v. United States, 10 Cir., 236 F.2d 514, affirmed 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134; Webb v. United States, 10 Cir., 191 F.2d 512. In Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314, the court said:

   "The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense."

his account debtor, defendant persuaded Shepherd to deliver his personal check, drawn on a Utah bank, to Amberson Investment in payment of the merchandise supposedly sold to him. It was also established that Shepherd agreed to send his check to Amberson Investment only after receiving a check which defendant knowingly drew in a like sum on a Denver bank account containing insufficient funds to cover it. Mail deliveries of these checks, by Shepherd in one instance and by collecting banks in the other instances, were the subject of four of the five remaining counts. The last count alleged that defendant mailed to Amberson Investment a letter written under the name of the business which he owned, and the defendant's own testimony clearly establishes these allegations.

Once the scheme to defraud was established, all that remained to be proved was that defendant caused each letter identified in the several counts to be mailed or received through the mails, depending on the particular charge.[5] To establish that the several uses of the mail were caused by defendant, it was sufficient to show that he set forces in motion which foreseeably would involve mail uses.[6] And, while in some instances there was no direct proof as to exactly how, where, and by whom the letters were deposited or received, the alleged mail uses could be established circumstantially.[7] The evidence is without conflict that all of the letters referred to in the indictment were related to Marvin's fraudulent scheme and were prepared and delivered through the mails as a natural result of it. The proof established that the several crimes charged were, in each instance, committed in the manner alleged.

The defendant could not have been misled by the proof introduced by the prosecution. He was charged with having devised a fraudulent scheme and with having used the mails on six separate occasions to further that scheme. The proof related directly to each of the specified mailings and to no others, so it is inconceivable that this proof, considered in connection with the allegations, could have misled the defendant. It is equally clear that the judgment in this case would bar a subsequent prosecution for mail fraud based on this scheme, and the six uses of the mail made to carry it out.

Affirmed.

5. Allegations and proof that the defendant caused a letter to be placed in or taken from an authorized depository is tantamount to alleging and proving that he actually deposited or received the letter. Pereira v. United States, 347 U.S. 1, 74 S. Ct. 358, 98 L.Ed. 435.

6. A person causes the mails to be used when he does an act which he reasonably could foresee would entail the use of the mails. United States v. Kenofskey, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836; Moffitt v. United States, 10 Cir., 154 F. 2d 402, certiorari denied 328 U.S. 853, 66 S.Ct. 1343, 90 L.Ed. 1625; United States v. Cohen, 2 Cir., 145 F.2d 82, certiorari denied 323 U.S. 799, 65 S.Ct. 553, 89 L.Ed. 637. Where defendant deposits for collection a check drawn on an out-of-town bank, he thereby causes the use of the mails. Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435.

7. Moffitt v. United States, supra, footnote 6; Palmer v. United States, 10 Cir., 229 F.2d 861, certiorari denied 350 U.S. 996, 76 S.Ct. 546, 100 L.Ed. 861; Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861. It is true, as defendant points out, that even with the aid of inferences, the evidence does not indicate the particulars of most of the mailings charged. However, by incontrovertible inferences, the evidence shows that with respect to each of the six mailings charged, there was either a mailing or a receipt at an authorized depository within the court's territorial jurisdiction.