Ernest "Duke" ARNOLD, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18170.

United States Court of Appeals
Ninth Circuit.

Sept. 4, 1964.

Rehearing Denied Oct. 12, 1964.

348

Robert A. Seligson, San Francisco, Cal., for appellant.

William N. Goodwin, U. S. Atty., Michael Hoff, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before MADDEN, Judge of the United States Court of Claims, and HAMLEY and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Appellant, Ernest "Duke" Arnold, appeals from a judgment of conviction entered on July 9, 1962, for conspiring to violate 21 U.S.C.A. § 174.[1] Trial was to a jury. This appeal comes to us from the United States District Court for the Western District of Washington, Northern Division. We will hereafter refer to this appeal as the instant case.

The errors assigned are three: (1) that appellant's conviction is in violation of the Constitutional protection against double jeopardy; (2) that there is a fatal variance between the pleading and the proof; and (3) that evidence of a conspiracy separate and distinct from the one charged in the indictment was admitted into evidence.

The facts can best be discussed in conjunction with assignment of error (1) relating to double jeopardy.

Appellant and others were tried in the United States District Court for the Northern District of California, Southern Division, charging conspiracy to violate the same section. Appellant was acquitted of that charge in May of 1959. That action will hereinafter be referred to as the California case.

In his assignment of error in the instant case appellant points to certain similarities in the indictments in the California case and the instant case, and contends that his conviction is violative of the Constitutional protection against double jeopardy.

At the outset we will specify the similarities and differences in the two indictments.

1. *Time:* In the California case appellant was named in only the first count of a twenty-two count indictment. In that count it is charged that at a time and place to the grand jury unknown, appellant and others conspired to violate 21 U.S.C.A. § 174. The fifty-seven overt acts alleged in that count took place between April 1, 1957 and January 14, 1959. The only overt act nam-

1. "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000.

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

ing appellant, number forty-nine, allegedly took place on August 15, 1958.

In the instant case the grand jury charged that appellant and others conspired from or on about September 1, 1957, the exact date being to the grand jury unknown, and continuing to the date of the filing of the indictment on April 19, 1962. It is to be noted that there is time overlap in the two indictments.

2. *Persons:* In the California indictment, seventeen persons including appellant were alleged to have conspired with twelve other persons and others to the grand jury unknown.

In the instant case, appellant and seven others were alleged to have conspired with thirty-seven other persons and others to the grand jury unknown. Appellant and LeRoy Lemons are common defendants in both indictments. None of the persons listed as co-conspirators is common to both indictments with the exception of one Wallace Hanks who is described as deceased in the indictment in the instant case.

3. *Places of Offense:* The overt acts in the California case are alleged to have taken place in California, Oregon, Washington, and New York among other places. The locale of the single overt act relating to appellant is Portland, Oregon.

In the instant case, the overt acts are alleged to have taken place in Washington, Oregon, and California. A few cities are different in the two cases. The overt acts naming appellant are alleged to have taken place in Portland, Oregon and Dallasport, Washington.

4. *Offense:* The offense charged in both indictments is the same—violation of 21 U.S.C.A. § 174. The language of the offenses as set out in the indictments is practically identical with the exception of the persons named in them as before mentioned and the fact that cocaine and heroin are the narcotic drugs enumerated in the California indictment, while heroin alone is the drug specified in the indictment of the instant case.

5. *Overt Acts:* There are fifty-seven overt acts alleged in the California case and twenty-eight in the instant case. None is the same.

It should also be mentioned that appellant was confined at McNeil Island Federal Penitentiary from June, 1956 until May, 1958 and in Springfield Medical Center, a federal institution from December, 1960 until the trial of the instant case.

The Fifth Amendment to the United States Constitution provides, in part: " * * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; * * *". U.S.C.A.Const. Amend. 5.

The question presented here is: are the offenses charged in the two indictments the same within the meaning of the constitutional prohibition?

■ The test most often cited in resolving the question of identity of offenses is: is proof of the matter set out in a second indictment admissible as evidence under the first indictment, and could a conviction have been properly sustained on such evidence? If the answer is yes, then the plea is sufficient; otherwise it is not. 1 Wharton's Criminal Law 535 (1957); Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911); Ebeling v. Morgan, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915); Morgan v. Devine, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153 (1919); McGinley v. Hudspeth, 120 F.2d 523 (10th Cir. 1941); Bacom v. Sullivan, 200 F.2d 70 (5th Cir. 1952); Ballerini

v. Aderholt, 44 F.2d 352 (5th Cir. 1930);
Waters v. United States, 328 F.2d 739
(10th Cir. 1964). This test was laid
down in Morey v. Commonwealth, 108
Mass. 433 (1871). In that case two in-
dictments were found against the defend-
ant, the first for lewd and lascivious
cohabitation, and the second for adultery.
The period of time charged for the
offense of adultery fitted within that
charged for cohabitation. The court
affirmed convictions on both indictments.
As in that case, the cases using the test
cited above are found generally to be
those which involve different crimes or
offenses alleged in two indictments, dif-
ferent counts, or even within one count.
But see Piquett v. United States, 81 F.2d
75 (7th Cir. 1936) at p. 79. In the in-
stant case, on the other hand, only one
offense is charged in both indictments,
to-wit: conspiracy to fraudulently and
knowingly receive, conceal, sell and facili-
tate the concealment and sale of certain
quantities of narcotic drugs. The ques-
tion, then, is not whether the doctrine
of former jeopardy will bar prosecution
for a single act or continuing offense
such as conspiracy which is violative of
more than one statute, but, rather,
whether the single offense of conspiracy
charged in each indictment is the same.

A comprehensive treatment of the sub-
ject is found in Short v. United States,
91 F.2d 614 (4th Cir. 1937), 112 A.L.R.
969. In that case it was held that be-
cause of the differences in the two in-
dictments for conspiracy to distill, sell,
remove, and conceal spirits without com-
plying with internal revenue laws, the
question of whether or not judgment in
the prior action was a bar to the subse-
quent action was a matter which should
have been submitted to the jury. The
differences adverted to were:

"(1) Difference in the periods of
time covered by the conspiracies as
alleged; (2) difference in the places
charged as the places of conspiring;
(3) difference in the persons charged
as coconspirators; (4) difference in
the overt acts alleged to have been
committed in furtherance of the con-
spiracies; and (5) the charging here
of the violation of an additional stat-
ute. * * * We agree that these
differences make it impossible to say
as a matter of law upon the face of
the indictments that they relate to
the same conspiracy; but we think
that because of the generality of the
language used it is likewise impos-
sible to say upon the face of the in-
dictments that they do not relate to
the same conspiracy. The questions
raised by the pleas of former jeop-
ardy, therefore, should have been
submitted to the jury under appro-
priate instructions from the court."
Short v. United States, supra, pp.
619–620.

Further, at p. 624,

"We think that we should point out,
however, that under general indict-
ments of the character here involved
the fact that evidence introduced
and relied on in the trial below would
have warranted conviction under the
North Carolina indictments is not
alone determinative of the question
raised by the pleas of former jeop-
ardy. To sustain such plea, it must
appear that the conspiracy here pros-
ecuted is the same as that for which
the prior prosecution was had; and
whether or not it is the same must
be determined from evidence as to
the conspiracy involved in the prior
prosecution."

■ In the instant case prior to the
trial the appellant and the Government
stipulated that the issue of double jeop-
ardy be tried to the Court without a
jury at the conclusion of the jury trial.
At the close of the trial the Court heard
oral argument on the issue from both
appellant and the Government, compared
the record of both proceedings, and found
both as a matter of fact and of law
"that the two conspiracies charged in
the Washington and California indict-
ments were completely different and un-
connected, although they were both gen-
eral in nature." Our review of the rec-
ords of both cases discloses ample sup-
port for those findings.

In the California case, the evidence introduced by the government is as follows: A narcotics conspiracy had been set up by one LeRoy Jefferson and one Clarence Criss. Jefferson was the moving force of the conspiracy and Criss his lieutenant. These men were the trunk of the tree. They employed several other persons to act as runners who traveled throughout Washington, California and Oregon dispensing narcotics and picking up sums of money from the smaller branches. The source of supply of the drugs was Villa Acuna, Mexico and in some instances New York City. The persons who supplied narcotics to members of the conspiracy were all persons other than those named at any point in the instant case. The operation was a large one involving many persons and considerable sums of money. In over 2,000 pages of transcript appellant and LeRoy Lemons (defendants in both cases) were mentioned rarely and then usually in connection with a purchase of narcotics from one of the lower members of the hierarchy. One Velmer Dorsey testified that appellant had told him that appellant wished he could "get a connection" with Jefferson.

In the instant case there is no evidence that defendants had picked up the reins of the organization Jefferson had established in the California case. On the contrary, the Government's evidence tended to show that appellant, Lemons, and one Sanders conceived and put the conspiracy into operation with their own funds; that their source of supply was Tijuana, Mexico from persons other than those named in the California case; that the narcotics were distributed to many "pushers" and addicts in the Seattle and Portland areas all of whom were different persons than those whose names appear in the California case with the possible exception of Wallace Hanks deceased at the time of the trial.

The appellant has offered various authorities relating to a presumption that a conspiracy once established is presumed to continue and that a conspiracy does not terminate by the withdrawal or addition of members. These propositions beg the ultimate question of whether or not both conspiracies were one and the same. There is support in the record for appellant's conclusion that the Government deliberately confined its evidence to the period from 1960 to 1962 and avoided the period from the date the conspiracy allegedly began, September 1, 1957 to 1960 because it feared a possible defense of double jeopardy. Yet this in itself does not tend to show identity of offenses.

"The plea of autrefois acquit consists of matter of record, and matter of fact. Of record, the indictment and acquittal of fact, that the defendant is the same person, and that the offence is the same." United States v. Shoemaker, 27 Fed.Cas. No. 16,279 at p. 1069 (1840); Short v. United States, supra, 91 F.2d p. 620.

"The same, mutatis mutandis, may be said of the plea of autrefois convict. In either case, where the record offered shows on its face the identity or nonidentity of person and offense, the question is one of law for the court: where this identity or non-identity does not appear upon the face of the record, the question is one of fact for the jury under appropriate instructions." Short v. United States, supra, at p. 620.

■ Where it may not be said that a plea of former jeopardy either does or does not lie as a matter of law from a comparison of the two indictments, then the issue should be submitted to the jury under appropriate instructions.

■ The record of both proceedings may be referred to and findings and conclusions as to identity of offenses based thereon in conjunction with the two indictments. Cf. United States v. Aviles, 274 F.2d 179 (2d Cir. 1960); Harlow v. United States, 301 F.2d 361 (5th Cir. 1962), at p. 375.

It does not appear from an analysis of the record of both proceedings that one large conspiracy has been split into two

small ones. The court below did not err in finding that the offenses were not identical in law and fact but were instead separate and distinct conspiracies.

Appellant next urges that a fatal variance existed between the indictment and the proof offered at the trial.

Count thirteen of the indictment, the only one naming appellant, alleged the conspiracy to have begun on or about September 1, 1957 and continuing to the date the indictment was filed, April 19, 1962. Of twenty-eight overt acts alleged in the indictment, appellant is alleged to have participated in nine of them starting with one on January 5, 1960, and the last allegedly taking place on October 1, 1960.

It is appellant's contention that the Government refrained from offering proof during the overlapping period (September 1, 1957 until January 14, 1959) of the indictment in the California case and the instant case because it feared a possible defense of double jeopardy; that because of these limits on the proof imposed by the Government, there was a variance between the time the alleged conspiracy was charged to have existed, from 1957 to 1962, and the time during which proof of the alleged conspiracy was offered at the trial.

■ The question posed is, then, simply, must the prosecution offer proof of the offense charged in the indictment throughout the period the offense allegedly took place or may it confine its proof to only a part of that period?

There can be no controversy over the clarity of the law in this area. The rule requiring that allegations and proof must correspond is based on two requirements: (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); Bennett v. United States, 227 U.S. 333, 33 S.Ct. 288,

57 L.Ed. 531 (1912); Smiley v. United States, 186 F.2d 903 (9th Cir. 1951); Brilliant v. United States, 297 F.2d 385 (8th Cir. 1962); Marvin v. United States, 279 F.2d 451 (10th Cir. 1960); Rathbun v. United States, 236 F.2d 514 (10th Cir. 1956); Cromer v. United States, 78 U.S.App.D.C. 400, 142 F.2d 697 (1944); Harris v. United States, 140 F.2d 567 (4th Cir. 1944).

Rule 52(a), Title 18 U.S.C.A., Federal Rules of Criminal Procedure, provides:

"(a) Harmless Error. Any error, defect, irregularity or *variance* which does not affect substantial rights shall be disregarded." (Emphasis added.)

■ There is general agreement among the cases that in a criminal case a variance should never be regarded as material where the allegation and proof substantially correspond, where the variance is not of the character that could have misled the defendant at the trial, and where the variance is not such as to deprive the accused of his right to be protected against another prosecution for the same offense. Berger v. United States, supra, 295 U.S. at p. 83, 55 S.Ct. 629; Washington & Georgetown R. Co. v. Hickey, 166 U.S. 521, 531, 17 S.Ct. 661, 41 L.Ed. 1101 (1896).

"The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused." Berger v. United States, supra, 295 U.S. at p. 82, 55 S.Ct. at p. 630.

Here the charge set out in the indictment was definite and informative and it is difficult to see how appellant could possibly have been unable to prepare his defense or could have been surprised. The overt acts naming him all took place in the year 1960. He was incarcerated in federal institutions for the entire period the conspiracy was alleged to have existed with the exception of a two and one-half year period from May 1958 until December 1960.

Nor can it be said that this variance is such as to deprive appellant of protection against another prosecution for this same offense. Appellant was placed in jeopardy for this particular offense for the entire period set out in the indictment and restriction of the proof to a smaller period within the period set out in that indictment will not vitiate the protection against subsequent prosecution for that entire period for that same offense.

Appellant's single authority, United States v. Russano, 257 F.2d 712 (2d Cir. 1958), is inapposite for in that case the indictment charged a continuing conspiracy from 1951 to 1957 but the proof disclosed two conspiracies in those years which the indictment had lumped together thus prejudicing defendants by allowing admission of evidence not otherwise admissible.

█ ▪ It is appellant's further position that evidence offered at the trial of a purchase of narcotics from appellant in June 1958 would have been inadmissible if the *indictment* had conformed to the proof, i. e. conspiracy after 1959. It cannot be said that the indictment was insufficient because where time is not an essential ingredient of the offense, it is sufficient to charge facts which show that the offense was committed within the statutory period of limitation and in such a case, even though there be a defect in the allegation as to time, it is one of form only. Berg v. United States, 176 F.2d 122 (9th Cir. 1952); Butler v. United States, 197 F.2d 561 (10th Cir. 1952); Weatherby v. United States, 150 F.2d 465 (10th Cir. 1945). Nor can the duration of the conspiracy as charged in the indictment be characterized as a mere guise for admission of improper evidence prior to the existence of the alleged conspiracy. Such a finding would rest entirely on conjecture and disregard the overwhelming presumption of regularity accorded to the deliberation and findings of grand juries. Beatrice Foods Co. v. United States, 312 F.2d 29 (8th Cir. 1963); United States v. Nunan, 236 F.2d

576 (2d Cir. 1956); United States v. Tolub, D.C., 187 F.Supp. 705 (1960).

█ The Government, then, is not bound to introduce evidence throughout the period of a continuing offense as set out in a valid indictment.

"* * * the date of an alleged offense as stated in the indictment is not binding so as to limit the proof to that specific date; and that under an allegation like that in the indictment, the proof may fix the offense on any date within the bar of the Statute of Limitations." Winslett v. United States, 124 F.2d 302 (5th Cir. 1942).

Accord, Alexander v. United States, 271 F.2d 140 (8th Cir. 1959); United States v. Tramaglino, 197 F.2d 928 (2d Cir. 1952).

"Generally the time alleged in an indictment is not descriptive of the offense, and need not be precisely proven." Hale v. United States, 149 F.2d 401 (5th Cir. 1945).

█ In his last assignment of error appellant urges that the District Court committed prejudicial error in admitting evidence of a separate conspiracy which bore no relationship to the conspiracy with which he was charged.

The evidence referred to is the testimony of the Government witness, Albert Kastl. Kastl testified that while employed as a special investigator for the Prosecuting Attorney in Klickitat County, he spoke with appellant in September, 1960, at appellant's home and later talked to co-defendant Lemons. The substance of the conversations related to the contemplated plan of the three to unlawfully import opium from Mexico and manufacture the same into heroin, and dispose of the same. No proof appears in the record of any overt act which indicated that the plan progressed from the field of thought and talk, into action. Our study of the record satisfies us that the testimony of Kastl does not relate to the conspiracy set forth in the indictment but rather to the contemplated conspiracy which was never activated. It cannot

be said that the appearance of Kastl as a government witness came as a surprise to the appellant since Kastl's name appears in overt acts twenty and twenty-two of the indictment. Kastl's testimony constitutes but a minor phase of the entire record when viewed in context with the entire testimony relating to proof of the conspiracy set forth in the indictment. Moreover, our examination of the entire record has convinced us that the guilt of the appellant for the offense set forth in the indictment was established by overwhelming proof. In these circumstances it is our view that the admission of Kastl's testimony, if error, did not result in substantial prejudice to the appellant.

The judgment appealed from is affirmed.