THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* FRANCISCO A. LÓPEZ ÁLAMO, Defendant and Appellant.

No. CR-66-92.    Decided February 8, 1967.

8

*Luis A. Archilla Laugier* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Adaljisa Díaz de Collazo, Assistant Solicitor General,* for The People.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Appellant, Francisco A. López Álamo, was convicted of an offense of grand larceny by a court without a jury, after waiving his right to trial by jury. He was sentenced to serve from two to four years in the penitentiary.

He alleges that the trial court committed four errors. After considering the record of the case and the efficient memorandum filed by defendant's counsel, we conclude that the trial court did not commit the errors assigned.

In order to determine the issue, we summarize below the facts of the case.

Policeman, Rafael López, accused appellant of the offense of grand larceny consisting in that at 10:00 p.m. on April 7, 1964, in the place Las Bombas in Guaynabo, P.R., he had removed the motor, transmission, and other units and parts of a Chevrolet vehicle, property of Miss Pomales Álvarez, attorney-at-law. Appellant was taken before Mr. José Gallego, justice of the peace, who, relying on the information furnished by the witness Agustín Crespo, determined that there was probable cause and fixed bail in the sum of $5,000. At the foot of the information said justice certified that he informed the defendants as to their right to communicate with a relative or an attorney and that "you are not bound to testify, and that any testimony could be used against you." However, the information states that the aforesaid offense was committed in the place indicated "On or about April 10, 1964." The day of the hearing, Miss Pomales testified that upon leaving the Inter American University, at 7:00 p.m. on April 7, 1964, she did not find her automobile in the place where she had parked it—the police found it the 10th of that month in Santa Rosa, in a pasture "in the Holsum Factory," in Bayamón. It had been dismantled; that that same day she saw appellant before Justice Gallego, in the District Court, and she heard him say "that he accepted that he had taken out the motor from the car, and the transmission, and had kept it in a garage he had"; that he

made such statements voluntarily without been coerced in any manner and after the judge had given him the warnings aforementioned; that appellant had gone "where the car was, because some boys told him that that car was there; that then he went and took out the motor and the transmission, with a truck crane he has, he transported it to the garage he has in the ward Fraile. He explained that he had cleaned the motor, that it was in perfect condition and that it was in his garage. He gave the address and we went there and in effect we found it." The prosecuting attorney asked Miss Pomales whether she had seen the motor and in answering if she had identified it by its number, she said that the number was "E-58-T-110382 and the original color was green, which was the same color that the vehicle had on the inside, that it still had it; it was complete and very clean; he had cleaned it and had. . . ." Agustín Crespo testified that at the request of a certain Cheo, he went with him and appellant, in the latter's truck crane, to the ward Santa Rosa to remove a bumper, "behind Holsum's Bakery." Upon being questioned by the prosecuting attorney he stated:

"A. When we arrived there Cheo began to remove the bumper and the motor had been removed, it was underneath, trapped. It was out.

Q. What do you mean by 'it was out'?

A. All the screws had been removed.

Q. But, was it in the place where the motor goes?

A. Yes, sir.

Q. And what happened with that motor?

A. Alamo took it away from there.

Q. Where to, if you know, did Alamo take it?

A. To a workshop.

Q. Where is it located?

A. In Fraile Llano."

He said that the vehicle was a 1958 Chevrolet; that he did not know who its owner was; neither did he know whether the motor was that of the vehicle in question. He was asked

whether that happened on April 7 and he answered "Yes, that it was the 10th, afterwards, that Cheo was caught." Miss Pomales testified again and stated that the vehicle was left completely useless and that the losses were $2,500; that "The motor, together with the transmission, is worth about $400." Justice of the Peace Gallego said that he met appellant when the latter was taken before him on the night of April 10, 1964; that "I informed him as to the information filed against him and I also informed him that he had the right to communicate with his family or with a close relative, or to retain an attorney, and I also informed him that he was not bound to make any statement because it could be used against him." Upon being questioned by the prosecuting attorney, he testified thus:

"Q. What was the conversation you had with the defendant?

A. Well, he informed that in that case he had gone with a truck crane and had taken away an automobile motor with the transmission.

Q. Did he say, if he did say it, where the facts occurred, from where had he taken that motor and that transmission?

A. From a place called, a ward called Santa Rosa, in Guaynabo."

Appellant himself denied that the said justice had warned him and on the contrary he testified that he did not make any statement before him; that "On April 7, 1964, I was in Crespo's workshop, I was doing some welding, a boy, known as El Pelú, comes in, I do not know him very well, I only know him by El Pelú, and I haven't seen him more than three times, and he comes to ask for the crane, to help him at the river. I told him I could not go there because I was doing some work at the time, and he told me: 'a favor is done to anybody, we go there, you help him, and come back at once.' I took my crane and went there and while I was inside I saw in the mirror, and then I got out, that El Pelú had some keys in his pocket. He went away and

sometime later he appeared with a bumper and then, later, he called Crespo and then Crespo appeared with a muffler and its pipe. Then I heard them say: 'that car is completely dismantled' and I went and saw, and I went to find out, and the car, in effect, was not worth five cents"; that he did not take anything from said place but that Crespo and Cheo "took a car's block with its transmission"; that "the block with the transmission because El Pelú told me: 'take that to your shop, I'll go by later to pick it up and I'll pay you'; Crespo had already stayed at his place"; that then he took "that" to his shop, took it down and left it there; that the detective went, together with Miss Pomales, to look for that equipment. His testimony about the prejudiced party is the following:

"A. She went there 'upset,' a day later.

Q. And there, did she identify that motor as the motor of her car?

A. Yes, she says so, but according to the accusation made by the detective the motor she asks for is 110382."

With regard to the date on which the facts occurred, appellant testified as follows:

"Q. And that happened on April 7?

A. No, that was not on April 7, when they took me before the justice was the 7th . . .

Q. Those facts, when they went to find you, was it the seventh?

A. That was the tenth.

Q. The facts with which you are charged, with stealing some automobile parts, did they occur the seventh?

A. It says so, they say that it was the 7th.

Q. Don't you know the day you went there?

A. Three or four days before that."

1. The first assignment of error is that the trial court lacked jurisdiction to take cognizance of the case since the information was filed without being supported by a valid determination of probable cause for the facts upon which

probable cause is determined were committed on April 7, 1964, and the facts charged in the information occurred the 10th of said month and year.

■ Rule 39 of the Rules of Criminal Procedure provides that the information or complaint shall be sufficient even though the date or the time at which the offense is alleged to have been committed is not stated, unless an allegation to that effect is necessary to charge the commission of an offense. However, the better practice is to determine with reasonable certainty the date on which the facts occurred and to include it in the complaint and then in the information.

■ Allegation of date is not necessary to charge the offense of grand larceny; it is not an essential ingredient thereof. Although it is true that there is a discrepancy as to the date on which the facts in this case occurred, from the record it is obvious that a sole incident which gave rise to the commission of the offense is involved; that probable cause was determined on the basis of the same facts related in the information and on the basis of the testimony of the witness Crespo on such facts. The discrepancy on the date stems from the uncertainty of all the witnesses in fixing the day on which the facts occurred. The record does not show that appellant was prejudiced by such error.

■ The rule of law is that where time is not an essential ingredient of the offense and the information alleges facts which show that the offense was committed within the statutory period of limitation, a defect as to the date is one of form only. With the result that it may be alleged that the offense was committed between different dates of different months. To allege that the offense was committed on a date subsequent to the information or the day (blank) of a particular month, is not fatal nor prejudicial to defendant's rights. *Arnold* v. *United States*, 336 F.2d 347 (9th Cir. 1964); *Butler* v. *United States*, 197 F.2d 561

(10th Cir. 1952); *State* v. *Andrews,* 99 S.E.2d 745 (N.C. 1957); *State* v. *Blent,* 120 A.2d 321 (Sup. Ct. Del. 1956); *State* v. *Thomas,* 277 P.2d 577 (Kan. 1954).

The information in this case alleges that the offense was committed "On or about April 10, 1964." This means that it could have been a little prior or subsequent to and not necessarily on that same day, that is to say, that it occurred "more or less" on that date. There is no showing in the record that two offenses of larceny were committed, one the 7th and the other the 10th of April 1964, so that it could be concluded that it was sought to prosecute appellant for an offense distinct from the one on which probable cause was determined or that he was prosecuted for an offense without a determination of probable cause of such offense having been made prior thereto. We conclude, therefore, that the trial court did not commit the first error assigned.

■ 2. Appellant argues that the stolen motor was not identified by its number; that appellant was connected only with the motor of a vehicle not with the one allegedly stolen. The evidence clearly shows that (a) Miss Pomales identified her vehicle in the scene of the crime, as well as the motor removed from her automobile when said motor was in appellant's garage; she identified it by its number and color; (b) appellant accompanied two other persons to the place where the aforesaid lady's vehicle was and from there he brought a motor and its transmission; (c) his version that the other two left said equipment in his establishment for some days was not believed by the trial court, rightly, in our opinion.

3. As a third error, appellant informs that there was no evidence as to the value of the motor in question. This assignment lacks merit since from the victim's testimony it appears that she valued the stolen motor, together with the transmission, at $400 which is four times greater than the

minimum amount fixed in the statutory definition of the offense (33 L.P.R.A. § 1683).

4. Lastly, appellant points out that the evidence was insufficient to support the conviction of grand larceny. His counsel carefully recites the evidence adduced in the case, more or less on the points we have previously set forth. He infers from his analysis that it is insufficient. We cannot agree that it is. The evidence showed that Miss Pomales' automobile was stolen and that after taking it to a pasture behind the Holsum factory in Guaynabo, it was dismantled. Appellant and two others removed a great number of parts from it. The motor, together with the transmission of the vehicle in question, was found and identified in appellant's garage. The trial judge did not believe, rightly, in our opinion, Crespo's testimony to the effect that he did not know whether the motor which appellant took from the pasture belonged to the vehicle which was there because the vehicle had nothing. This witness testified that "the motor had been removed, it was underneath, trapped. It was out," that is to say, "All the screws had been removed" but it was in the place in the vehicle where the motor goes. The inference that the motor belonged to the stolen car is clear in this testimony. In any event it appears that appellant took away only one motor from the pasture in question and if a little later Miss Pomales identified her automobile's motor in the former's establishment, it is obvious that it was the motor which appellant took out from within said vehicle and carried to his garage.

In view of the foregoing, the judgment rendered in this case by the Superior Court, Bayamón Part, on August 31, 1964, will be affirmed.