951 F.2d 363
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose EASLEY, Defendant-Appellant.
 No. 90-10139.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted April 9, 1991
Decided Dec. 19, 1991.
 
 Before PREGERSON, NOONAN and DAVID R. THOMPSON, Circuit Judges.
 ORDER
 The memorandum disposition filed on May 23, 1991 is hereby withdrawn.
 The petition for rehearing is denied.
 Before PREGERSON, NOONAN and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jose Easley was convicted of conspiracy in violation of 21 U.S.C. §§ 841(a)(1) and 846. He was also convicted of using a telephone to facilitate the commission of the conspiracy. He appeals. We affirm in part, reverse in part and remand.
 
 THE CASE
 
 3
 Easley was indicted with eight others for a conspiracy described in the indictment as beginning May 1, 1987 and ending January 25, 1989, to manufacture, possess and distribute methamphetamine. Easley went to trial alone. The government proved that Easley was in prison in December 1988; that Gerald Caperell, the organizer of a gang that had been manufacturing and distributing methamphetamine, arranged his bail; that in January 1989 Easley was recruited by Caperell as security for a new meth lab; that Easley had conversations with Jonathan Junior Edmisten, a government informant, who was pretending to help Gerald Caperell with the new lab; that on January 14, 1989 Easley spoke on the telephone to Gerald Caperell; that Gerald Caperell instructed Edmisten to take Easley to the lab; that on January 18, 1989 Edmisten drove Easley in the direction of the lab and during the ride Easley told him to engage in maneuvers of counter-surveillance and finally left the car; and that on January 25, 1989 Easley asked Edmisten for the key to the place where the chemicals were stored.
 
 
 4
 In addition to Edmisten, Martin Caperell and Gerald Caperell testified against Easley. Gerald Caperell stated that he had been arrested in December 1988 after producing 160 ounces of methamphetamine with the help of Alan Mellor and Robert Maynard. He met Easley in the jail and discussed with him and Edmisten "the possibility of putting together another amount of meth." Edmisten was to get the chemicals, the equipment and the place. Easley was to get the key from Edmisten. Gerald Caperell would teach Easley how to cook the chemicals to make methamphetamine. In January 1989 Caperell observed police surveillance of Edmisten and warned Easley to get out of the car. Most critically for our purposes, the prosecution elicited testimony from Gerald Caperell about Caperell's prior conspiracy, which ended with his arrest on December 3, 1988. He testified that that ring produced 160 ounces of methamphetamine. At the prosecution's behest, he outlined the final phases of manufacturing and packaging the methamphetamine, described the roles of several of the conspirators, and detailed who received what quantities of the drug. This testimony about the previous ring's activities shed no light on Easley's later conspiracy but, offered in Easley's trial, did create the impression that Easley was somehow mixed up in the earlier doings.
 
 
 5
 The indictment charged a single conspiracy that began on May 1, 1987 and ended January 1989. In fact, there were two conspiracies, one that began in May 1987 and ended with the incarceration of Gerald Caperell in December 1988 and a second conspiracy involving Easley that began in December 1988 and ended on January 25, 1989. The indictment was broad enough to cover Easley's activity, but the grand jury failed to indict him solely for the second conspiracy.
 
 
 6
 Where the indictment charges a single large conspiracy and the proof shows several smaller ones, each within the words of the indictment, the variance warrants reversal only if it prejudiced the defendant. Berger v. United States, 295 U.S. 78, 81 (1935); United States v. Kenny, 645 F.2d 1323, 1334 (9th Cir.), cert. denied, 452 U.S. 920 (1981). Likewise, variance between indictment and proof as to beginning and ending dates of a conspiracy does not warrant reversal unless the variance prejudiced the defendant. Arnold v. United States, 336 F.2d 347, 353 (9th Cir.1964), cert. denied, 380 U.S. 982 (1965); accord, United States v. Jackson, 935 F.2d 832, 843-44 (7th Cir.1991); United States v. Davis, 679 F.2d 845, 852 (11th Cir.1982), cert. denied, 459 U.S. 1207 (1983).
 
 
 7
 Easley argues that the variance created prejudice. At his trial the government used Gerald Caperell as a witness and drew from him a description of the conspiracy as he had run it in 1987 and 1988. This testimony of the kingpin arguably prejudiced Easley by connecting him to the first conspiracy. It is hard to see any other function of this testimony.
 
 
 8
 The government urges that, as we stated in United States v. Anguiano, 873 F.2d 1314, 1318 (9th Cir.), cert. denied, 110 S.Ct. 416 (1989), "there is no problem of spillover when ... the defendant stands trial alone." Anguiano, however, is distinguishable. There the indictment charged two separate conspiracies as one. Defendant was a central figure in both conspiracies. The evidence of each conspiracy therefore reflected on defendant's own guilt. Here, Caperell's testimony may have tainted Easley with the previous conspiracy in which he played no part. Anguiano does not negate the obvious prejudice which resulted if the jury convicted Easley for someone else's acts.
 
 
 9
 The government argues that Easley's guilt was overwhelmingly demonstrated so that the prejudicial testimony was harmless. But
 
 
 10
 [t]he inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.
 
 
 11
 Kotteakos v. United States, 328 U.S. 750, 765 (1946).
 
 
 12
 The determination of whether prejudice has resulted is, of course, not an easy one. There is no mechanical formula to be applied. On balance, in this case where a petty criminal has been used by a major drug dealer as his tool we believe the testimony was prejudicial and its admission plain error. Easley is entitled to a new trial on the conspiracy that began in December 1988 and ended on January 25, 1989.
 
 
 13
 Easley's conviction of unlawful use of a telephone to facilitate a felony stands. United States v. Powell, 469 U.S. 57 (1984); United States v. Brown, 761 F.2d 1272 (9th Cir.1985).
 
 
 14
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3